## IN THE CIRCUIT COURT FOR PRINCE GEORGES COUNTY

**DAMON B. WILSON**
6904 Stirling Street
Fort Washington, Maryland 20744

    PLAINTIFF
-versus-

**PRINCE GEORGES COUNTY
GOVERNMENT**
Serve: Rhonda L. Weaver, Esquire, County
Attorney, Resident Agent
1301 McCormick Drive
Suite 4100
Largo, MD 20774

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY (WMATA)**
Serve: Patricia Y. Lee, Resident Agent
600 5th Street, N.W.
Washington, DC 20001

**METRO OFFICER CASTRO**
600 5th Street, N.W.
Washington, DC 20001

**METRO OFFICER HENDERSON**
600 5th Street, N.W.
Washington, DC 20001

**METRO SERGEANT RICH**
600 5th Street, N.W.
Washington, DC 20001

**METRO OFFICER BARRETO**
600 5th Street, N.W.
Washington, DC 20001

**METRO OFFICER JOHN DOE**
600 5th Street, N.W.
Washington, DC 20001

    DEFENDANTS

CIVIL CASE NO.:  **C-16-CV-24-005667**

## THIRD AMENDED COMPLAINT AND JURY TRIAL PRAYER

**NOW COMES**, Damon Wilson (the "Plaintiff") by and through his attorneys, KIM PARKER, AND LAW OFFICES OF KIM PARKER, P.A. and sues the aforementioned Defendants, Plaintiff is suing the aforementioned defendants jointly and severally. Plaintiff incorporates all previously filed complaints, as if herein restated, and in support thereof, states the following:

## INTRODUCTORY STATEMENT

1. "Corruption within the law enforcement agencies that are entrusted with the responsibility of upholding our laws represents a profound and complex threat to our communities. This insidious problem not only allows dangerous and violent criminals to operate freely, potentially endangering the safety of innocent citizens, but it also critically undermines the foundational trust that the public must place in law enforcement and the entire criminal justice system. When these agencies fail to uphold the law impartially and ethically, it breeds disillusionment among citizens and diminishes their confidence in the very institutions designed to protect them". (Former United States Attorney General John D. Ashcroft, in remarks to the Second Global Forum on Fighting Corruption).

2. This legal action is initiated to seek substantial monetary damages in accordance with the common law principles established in the State of Maryland and the provisions delineated in the Maryland Declaration of Rights. The action is specifically directed against four Metro Transit Police Officers—namely, Officers Henderson, Castro, Rich, and Barreto—who are being held accountable for their actions in both their official capacities as law enforcement officers and their individual personal capacities. This dual approach underscores the gravity of their alleged misconduct and the implications of their role in the enforcement of the law.

3. Metro Transit Authority has aggressively engaged in fare evasion initiatives aimed explicitly at addressing, what they allege to be pressing issue of fare evasion on public transportation systems throughout the region. Under Maryland law, fare evasion constitutes a criminal violation, and offenders are subject to civil penalties that can escalate to as much as $100. It is particularly noteworthy that during the period spanning from January 1, 2016, to February 5, 2018, law enforcement officials conducted over 30,000 stops based on suspected fare evasion violations, highlighting a significant and ongoing enforcement effort. In the year 2016 alone, a total of 5,360 citations or summonses were issued to individuals accused of fare evasion. This number saw a staggering increase in 2017, escalating to 13,762 citations[1], reflecting an intensified crackdown on fare violations. Following the implementation of the new safety initiative on November 1, 2022, Metro Police adopted a more aggressive stance in targeting individuals suspected of fare evasion, conducting numerous stops and enforcement actions. Disturbingly, there have been numerous accounts describing the use of excessive force and actions characterized as barbaric by Metro Transit Police Officers, culminating in several officers facing conviction for egregious violations of civil rights[2]. The Plaintiff in this case seeks justice and appropriate compensation for the significant and wrongful acts inflicted upon him by the Defendants, asserting that their behavior was not only unprofessional but also unlawful, resulting in considerable harm.

## JURISDICTION

4. This Court has subject matter jurisdiction over this dispute pursuant to Section 4-402 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated. The amount in controversy exceeds thirty thousand dollars ($30,000).

---

[1] https://ggwash.org/view/69171/a-new-report-highlights-the-stark-racial-disparities-in-metro-fare-enforcem
[2] https://www.justice.gov/opa/pr/former-dc-metro-transit-police-officer-sentenced-federal-civil-rights-violation-beating

5. On December 3, 2024, Defendant Prince Georges County Government, was served with Plaintiff's Local Tort Claims Act Notice. Therefore, all conditions precedent to filing this action have been satisfied prior to the filing of the instant complaint.

## PARTIES

6. The Plaintiff, Damon Wilson, is a resident of Prince George's County, Maryland. At all relevant times, Plaintiff was a business invitee on the Metro Bus, and as such, Defendants owed a duty of care to him.

7. At all relevant times, the Defendant, Washington Metropolitan Area Transit Authority (hereinafter referred as "WMATA") d/b/a Metro Transit Police Department ("MTPD') was is at all times relevant herein is a interstate compact agency, by the terms of its enabling legislation, an agency and instrumentality under the Laws of the State of Maryland, District of Columbia, and Virginia codified in Maryland Code, Transportation Article § 10-204. At all times relevant herein owned and operated the MetroAccess bus involved in the aforementioned incident.

8. The Defendant, Prince Georges County Government ("PG County"), is a municipality operating under the laws of the State of Maryland with the authority and obligation to prosecute criminal matters within its territorial jurisdiction. Through its State's Attorney's Office, PG County maintains exclusive prosecutorial jurisdiction over crimes, infractions, and offenses that occur within Prince Georges County, Maryland. This prosecutorial authority extends to cases initiated by the WMATA MPD. WMATA MTPD's authority to operate and PG County's corresponding prosecutorial jurisdiction are governed by WMATA's enabling legislation, codified in Maryland Code, Transportation Article § 10-204.

8. Defendant Metro Officer Castro (hereinafter referred to as "Defendant Castro") represented himself to the Plaintiff and the general public as an experienced, competent Police

Officer as defined by Maryland law. Upon information and belief, Defendant Castro is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Castro owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Castro acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Castro had a non-delegable duty to the Plaintiff. Defendant Castro was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Castro was acting under color of law as a member of the MTPD. Defendant Castro is being sued in his official and individual capacity.

9.Defendant Metro Officer Henderson (hereinafter referred to as "Defendant Henderson") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Henderson is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Henderson owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Henderson acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Henderson had a non-delegable duty to the Plaintiff. Defendant Henderson was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Henderson was acting under color of law as a member of the MTPD. Defendant Henderson is being sued in his official and individual capacity.

10. Defendant Metro Seargent Rich (hereinafter referred to as "Defendant Rich") represented himself to the Plaintiff and the general public as an experienced, competent Police Seargent who acted with supervisory authority of Defendants Castro, Henderson and Barreto; as defined by Maryland law. Upon information and belief, Defendant Rich is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Rich owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Rich acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Rich had a non-delegable duty to the Plaintiff. Defendant Rich was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Rich was acting under color of law as a member of the MTPD. Defendant Rich is being sued in his official and individual capacity.

11. Defendant Metro Officer Barreto (hereinafter referred to as "Defendant Barreto") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Barreto is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Barreto owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Barreto acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Barreto had a non-delegable duty to the Plaintiff. Defendant Barreto was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant

Barreto was acting under color of law as a member of the MTPD. Defendant Barreto is being sued in his official and individual capacity.

12. Defendant Metro Officer John Doe (hereinafter referred to as "Defendant Doe") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Doe is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Doe owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Doe acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Doe had a non-delegable duty to the Plaintiff. Defendant Doe was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Doe was acting under color of law as a member of the MTPD Defendant Doe is being sued in his official and individual capacity.

13. The Defendants John Doe are individuals and/or entities whose identities have yet to be fully determined. Upon reasonable discovery, once these individuals are identified, the Plaintiff intends to amend this Complaint to reflect their true names and capacities as soon as that information is available.

## FACTS RELEVANT TO EACH COUNT

14. On December 11, 2023, Plaintiff Damon Wilson boarded a Metro Bus in Prince George's County, Maryland, a move that marked the beginning of a distressing series of events that would alter his day significantly. Plaintiff, a disabled individual, possessed a valid Metro

Smart Access Smart Trip Card, which aligned with his legal entitlement to board and ride the public transit system without the burden of fare evasion.

15. Upon entering the bus, Plaintiff complied with all expected protocols. He proceeded to find a seat, demonstrating orderly and appropriate behavior as a passenger. Choosing a seat directly across from the rear of the bus, Plaintiff settled in comfortably, prepared for his journey ahead.

16. The atmosphere on the bus was generally calm until a disturbance erupted. An unidentified individual, later revealed to be Defendant Officer Castro, approached Plaintiff. This officer was dressed in plain clothes devoid of any visible insignia that would indicate his law enforcement status, adding an element of confusion and uncertainty to the interaction. He tapped Plaintiff on the shoulder in a manner that disrupted Plaintiff's peace.

17. Identifying himself as an Officer, Defendant Castro displayed his law enforcement credentials in a manner that was more intimidating than reassuring. The display of authority came with an unfounded accusation, as Castro claimed that Plaintiff had engaged in fare evasion, a serious allegation given the context and amounting to a direct affront to Plaintiff's integrity as a lawful passenger.

18. Taken aback by the accusation, Plaintiff immediately refuted this allegation, retrieving and presenting his Metro ID Card with urgency. The card prominently displayed his name, ID number, and expiration date, serving as unequivocal proof of his lawful status and qualification for the disabled fare.

19. Rather than acknowledging the validity of Plaintiff's ID Card, Defendant Castro remained obstinate and unyielding. He coldly asserted that because Plaintiff had not "flashed" his card in a timely manner, he must disembark the bus immediately, threatening that failure to comply

would result in a charge of fare evasion. Despite having no factual basis for such a claim, Castro insisted on the unjust demand.

20. Notably, throughout this troubling exchange, Defendant Castro did not take any steps to verify the status or validity of Plaintiff's credentials, disregarding his responsibility as an officer to confirm facts prior to making accusations against a citizen. When Plaintiff protested, Defendant Castro displayed a can of mace, and threatened to mace plaintiff if he did not leave.

21.Feeling frustrated yet compelled to avoid further conflict, Plaintiff complied with Castro's demands and began to exit through the rear exit of the bus. However, as he navigated down the two steps leading from the bus, the situation escalated dangerously. With no provocation, an unidentified male, later identified as Defendant Officer Henderson placed his hands on Plaintiff and forcefully shoved him from behind.

22. The unwarranted shove sent Plaintiff crashing violently forward, causing him to strike his head against the hard glass panel of the bus, a sudden and barbaric act that startled other passengers and further exacerbated the tension. Instead of de-escalating the situation, Defendant Henderson ratcheted up the aggression. Emboldened by his colleague's actions, he then shoved Plaintiff again, this time forcefully pushing him to the ground, where Plaintiff landed helplessly on the unforgiving pavement.

24. As Plaintiff lay on the ground, disoriented and in agony, none of the officers present offered any form of assistance or even a semblance of concern regarding Plaintiff's welfare. They stood idly by while Plaintiff endured both physical and psychological suffering, lacking the basic decency expected from individuals sworn to protect and serve.

25. Shortly thereafter, Defendants Sergeant Rich and Officer Barreto arrived at the scene. Despite hearing Plaintiff's repeated assertions that he was a valid Metro cardholder, Sergeant Rich

indicated he would investigate the assault and battery that had just occurred against Plaintiff, showing a dismal disregard for the obvious misconduct of the involved officers.

26. In a shameful turn of events, even after Plaintiff had provided verification of his valid card, the Defendants resolved to charge him with fare evasion, a clear miscarriage of justice that compounded his humiliation.

27. Following this series of events, Plaintiff was transported via ambulance to a nearby hospital, overwhelmed by pain and confusion. Medical evaluations revealed serious injuries, including a diagnosis that necessitated a recommendation for a hip replacement due to the extent of the trauma sustained during the aggressive encounter.

28. As a direct consequence of the excessive force exerted by the Defendants, coupled with the psychological trauma endured throughout this ordeal, Plaintiff Damon Wilson experiences both physical pain and profound emotional distress. The injuries he has sustained, compounded by the exacerbation of pre-existing mental health and physical conditions, have left him facing ongoing suffering, fear, and anxiety.

29. Following WMATA MTPD's issuance of the citation, the Prince Georges County State's Attorney's Office initiated criminal prosecution against Plaintiff for fare evasion in the District Court of Maryland for Prince Georges County. The State's Attorney's Office proceeded with the prosecution based exclusively on the WMATA MTPD citation document, without obtaining any corroborating evidence. The prosecuting attorney did not interview WMATA MTPD Officers who issued the citation, did not secure the available surveillance footage from where the alleged incident occurred, did not obtain witness statements from Metro employees or passengers present during the incident, and did not verify the electronic fare payment records from Plaintiff's registered SmartTrip card. Subsequently, on April 2, 2024, dismissed all charges against

Plaintiff in the District Court of Maryland for Prince Georges County on the request of the State's Attorneys Office.

### COUNT ONE– BATTERY
### (Defendant Castro and Henderson)

30. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

31. At all times relevant to this action, Defendants were acting within the scope of their duties as Police Officers, and under the color of State law.

32. On or about December 11, 2023, while lawfully traveling as a passenger on a Metro Bus in Prince George's County, Maryland, Plaintiff was subjected to unlawful and intentional physical contact when Defendant Officer Henderson, without any provocation or justification, forcefully shoved him from behind.

33. This unexpected and aggressive contact caused Plaintiff to lose his balance, resulting in a violent collision with the bus interior, specifically hitting his head against the glass panel. The force utilized was excessive and constituted a clear infringement of Plaintiff's personal rights.

34. The action taken by Defendant Henderson was executed with intent, aiming to cause harmful and offensive contact. As a direct result of this battery, Plaintiff suffered substantial physical injuries, including pain and trauma, as well as emotional distress stemming from the violent nature of the encounter.

35. Defendants conduct was reckless and inappropriate given the Plaintiff's status and vulnerable condition.

36. The Plaintiff did not consent to the use of force against him, and the actions of Defendants were not justified under any circumstances.

37. Defendants actions were malicious, as they attacked the Plaintiff without justification, and was done with an evil motive and/or a reckless disregard for the consequences.

38. Therefore, Defendants are liable for battery against the Plaintiff, due to their unlawful, intentional, malicious and reckless conduct.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000 as well as punitive damages in the amount of $5,000,000, costs of this suit, and any other relief the Court deems just and proper.

## COUNT TWO– ASSAULT
### (Defendants' Castro and Henderson)

39. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40. During the distressing incident aboard the Metro Bus, Defendant Officer Castro threatened Plaintiff by brandishing a canister of mace and issuing a menacing warning that he would use the mace if Plaintiff did not comply with his unlawful demand to disembark immediately.

41. This threatening behavior instilled in Plaintiff a reasonable apprehension of imminent harmful or offensive contact, creating a climate of fear as he perceived a genuine threat to his safety.

42. The confrontational actions taken by Defendant were reckless, malicious and demonstrated a failure to consider the Plaintiff's mental health status and vulnerable condition, which should have been taken into account given the circumstances.

43. As a direct and proximate result of the actions of Defendant, the Plaintiff suffered not only physical injuries but also significant psychological trauma, which was exacerbated by his pre-existing health conditions.

44. Defendant was aware that his actions posed a risk of harm, yet hey proceeded to engage in conduct that amounted to an intentional assault, demonstrating a callous disregard for the Plaintiff's safety.

45.The Plaintiff did not consent to any use of force against him, and the actions of Defendant were unjustifiable considering the Plaintiff's vulnerable state.

46. Defendant's action resulted in harm to Plaintiff.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000 as well as punitive damages in the amount of $5,000,000, costs of this suit, and any other relief the Court deems just and proper.

## COUNT THREE - DEFAMATION *PER SE*
### (Defendants  Prince Georges County, Castro, Rich, Henderson, Doe, and Barreto)

47.Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48. During the incident, Defendant Officer Castro publicly and falsely accused Plaintiff of fare evasion, which was unequivocally untrue. This baseless accusation was made loudly enough for nearby passengers to hear, thereby damaging Plaintiff's reputation among fellow citizens.

49. The statement made by Defendant Castro carries the burden of defamation *per se*, as it implies conduct of a criminal nature and is inherently damaging to Plaintiff's character and standing within the community. Moreover, Defendants filed criminal charges repeating same allegations.

50. The false statements made by Defendant have caused Plaintiff significant harm, leading to emotional distress and damage to his reputation.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000 costs of this suit, and any other relief the Court deems just and proper.

## COUNT FOUR - MALICIOUS PROSECUTION
### (Defendant PG County, Castro,  Doe, Barretto and Henderson)

51.Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

52.On December 11, 2023, Defendants Castro, Henderson, Rich, and Barreto initiated and maliciously pursued criminal charges against Plaintiff for fare evasion despite Plaintiff's immediate presentation of his valid Metro Smart Access Smart Trip Card for disabled riders, his multiple verbal confirmations of lawful status as a qualified disabled passenger, and the readily available electronic verification system that could have confirmed his valid fare status. The Defendants deliberately ignored the presence of multiple witnesses on the Metro bus who observed Plaintiff's proper boarding, and proceeded with charges despite a complete absence of any evidence suggesting fare evasion.

53.The prosecution, initiated through the Prince Georges County State's Attorney's Office, continued from December 11, 2023, through April 2, 2024, despite the Defendants knowledge that Plaintiff was physically assaulted during the incident, requiring emergency medical transport and resulting in injuries so severe that hip replacement surgery was recommended. Throughout this period, no verification of the fare evasion allegation was conducted, and the Defendants deliberately disregarded the existence of bus surveillance footage that would have confirmed

Plaintiff's lawful entry, as well as electronic records of his Smart Trip Card that would have verified his valid disabled rider status.

54. On April 2, 2024, all criminal charges against Plaintiff were dismissed in the District Court of Maryland for Prince Georges County upon the State's Attorney's Office's own motion, constituting a favorable termination of the prosecution.

55. The Defendants acted with actual malice and without probable cause, as demonstrated by Officer Castro's immediate hostile approach while in plain clothes, his threat to use mace against a disabled passenger, the subsequent use of excessive force resulting in serious injury, the deliberate disregard of Plaintiff's valid Metro ID Card, and the complete failure to conduct any investigation before pursuing charges. The malicious nature of their actions is further evidenced by their continuation of prosecution despite readily available exculpatory evidence.

56. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff has suffered substantial damages, including physical injuries requiring ongoing medical treatment, aggravation of pre-existing conditions, severe emotional distress and psychological trauma, legal expenses in defending against false charges, loss of freedom of movement and liberty interests, and continuing anxiety and fear regarding use of public transportation.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000 costs of this suit, and any other relief the Court deems just and proper.

### COUNT FIVE – NEGLIGENCE
### (Defendants Rich, Doe, Castro, Barretto and Henderson)

57. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58.Defendants had a duty of care to ensure the safety and well-being of passengers on the Metro Bus.

59.By improperly confronting Plaintiff, failing to verify his claims, and using excessive force, the Defendants breached their duty of care.

60.The Defendants breached their duty to the Plaintiff through a series of negligent acts and omissions. These include, but are not limited to:

       a)  Initiating an unjustified physical confrontation with the Plaintiff;

       b)  Employing excessive and unreasonable force against the Plaintiff, including striking him;

       c)  Neglecting to de-escalate the situation or attempt verbal resolution at any point;

       d)  Detaining the Plaintiff against his will;

       e)  Threatening Plaintiff with bodily harm

       f)  Other acts and or omissions that may be revealed during the course of discovery.

61.The Defendant' negligent acts and omissions were direct and proximate causes of the Plaintiff's injuries and harm.

62. As a direct and proximate result of the Defendants negligence, the Plaintiff has suffered and will continue to suffer significant physical injuries, severe emotional distress, exacerbation of his pre-existing mental health conditions, and substantial pain and suffering. The Plaintiff has incurred and will incur medical expenses and other economic damages, along with non-economic damages for his past and future emotional distress, loss of enjoyment of life, and other permanent harms.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and

suffering, in the amount greater than $75,000, costs of this suit, and any other relief the Court deems just and proper.

## COUNT SIX-GROSS NEGLIGENCE
### (Defendants Rich, Doe, Castro, Barretto and Henderson)

63.Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

64.The Defendants conduct, as described above, constituted gross negligence and a reckless disregard for the Plaintiff's safety and well-being. By:

        a.  Initiating an unjustified physical confrontation with the Plaintiff;

        b.  Employing excessive and unreasonable force against the Plaintiff;

        c.  Failing to de-escalate the situation or attempt verbal resolution at any point;

        d.  Detaining the Plaintiff against his will;

        e.  Threatening Plaintiff;

        f.  Other acts and or omissions that may be revelated during the course of discovery.

65.The Defendants demonstrated a flagrant indifference to the Plaintiff's rights and a conscious disregard for the extreme risk of harm their actions posed.

66.The Defendants' gross negligence was the direct and proximate cause of the Plaintiff's assault, battery, and false imprisonment. The Plaintiff suffered physical injuries, including head and, emotional trauma, exacerbation of his pre-existing conditions, and the potential loss of his liberty as a direct result of the Defendants grossly negligent and reckless conduct.

67.The wrongful conduct of Defendants, which was undertaken without regard to the health and safety consequences amounted to gross negligence in that Defendants evinced such little regard for its duties of care, good faith and fidelity owed to Plaintiff as to raise a belief that

the acts and omissions set forth above were the result of conscious indifference to the rights and welfare of Plaintiff.

68. Such conclusion is grounded in the fact that Defendants was aware of widespread issues with their MetroPolice Officers injuring, assaulting and mistreating citizens before, during and after the incident involving Plaintiff, and refused to implement adequate measures to correct and prevent the persistent recurrence of the same. Moreover, Defendants were aware, before, during and after the incident involving Plaintiff, that these deficiencies posed a threat to customers who, like Plaintiff, were particularly dependent and in need of transportation.

69. Defendants acts and/or omissions are of such a character to rise to the level of gross negligence. Furthermore, Plaintiff would show that the acts and/or omissions of Defendants were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness on the part of Defendants that their acts would, in reasonable probability, result in serious personal injury or death. Defendants caused substantial personal injury to Plaintiff and engaged in acts or omissions that, when viewed objectively from the standpoint of Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, Defendants had actual, subjective awareness of the risk involved in his acts and omissions, but nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others, including the Plaintiff.

70. As the direct and proximate result of the aforesaid grossly negligent, careless, reckless, willful and wonton acts or omissions of the Defendants, Plaintiff suffered great and permanent physical harm and injury, all of which has and will, upon information and belief, in the future cause Plaintiff to undergo much physical pain, suffering, and mental anguish, and has and will,

upon information and belief, in the future cause Plaintiff to have to spend money for medicine and medical services and has caused Plaintiff to suffer economic losses.

71.The Plaintiff is informed and believes that he is entitled to a trial by jury, judgment on his causes of action for actual and punitive damages against the [i]ndividual Defendants that a trier of fact may determine, together with the costs of this action and for such other relief as this Court may deem just and proper.

WHEREFORE, as a direct and proximate result of the Defendants individual and collective conduct, Plaintiff is entitled to recover from Defendants reasonable compensatory damages in an amount in excess of $75,000; Moreover, the [I]ndividual Defendants conduct was so reckless, malicious, careless and wanton and in such total disregard for the rights and well-being of the plaintiff', such that plaintiff is entitled to punitive damages in the sum in amount to be determined by a fair and impartial jury for all damages Plaintiff suffered, including physical, emotional, and economic injuries.

## COUNT SEVEN-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Castro, Henderson, Rich, Barreto and Does)

72.Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

73. The Defendants intentionally assaulted and battered Plaintiff, violated his State constitutional rights, and abused their power as Police Officers, acting with intentional and reckless disregard for his rights.

74. As a result of the Defendants' intentional and/or reckless acts, Plaintiff suffered and continues to suffer severe emotional distress.

75. Plaintiff experienced humiliation from the encounter, which took place in front of multiple citizens and was humiliating.

76. The actions of the Defendants are the direct cause of the injuries described above.

77. Plaintiff is further entitled to an award of punitive damages to punish the Defendants' for their willful and malicious and/or reckless conduct toward him.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000, as well as punitive damages in the amount to be determined at trial, and any other relief the Court deems just and proper.

## COUNT EIGHT-MARYLAND DECLARATION OF RIGHTS
### (Defendants PG County, Castro, Henderson, Rich and Barreto)

78.Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

79. The actions of Defendants Castro, Henderson, Rich and Barreto, all of which were committed under the color of their authority as members of the Metro Police Department and while acting in the capacity of duly authorized police officers, violated Plaintiff's clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26, including but not limited to: (a) Freedom from the unreasonable seizure of his person; and (b) Freedom from the use of excessive, unreasonable and unjustified force against his person.

80. As a result of the above-described acts attributed to the Defendants Castro, Henderson, Rich and Barreto, Plaintiff Wilson was deprived of rights and immunities secured to him under the Maryland Declaration of Rights – in particular, his right not to be subjected to excessive force during the course of an ongoing stop, detainment, and/or arrest. In addition, Plaintiff has a constitutional right to be free from malicious prosecution.

81. As a direct consequence in result of the actions and omissions of Defendants Castro, Henderson, Rich and Barreto described herein, Plaintiff Wilson was deprived of his liberty; was

caused to suffer physical injuries; and has suffered and will continue to suffer economic loss due to the sums of money spent to alleviate the injuries that were inflicted by the Defendant Officers.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000, as well as punitive damages in the amount to be determined at trial, attorneys fees and cost and any other relief the Court deems just and proper.

## COUNT NINE-FALSE IMPRISONMENT
### (Defendants Castro, Rich, Henderson, Doe, and Barreto)

82. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

83. At all times relevant to this action, Defendants Castro, Rich, Henderson, Doe, and Barreto were acting under color of law as duly sworn officers of the Metro Transit Police Department (MTPD), clothed with the authority of their positions and acting within the scope of their employment.

84. On the above-stated date, Defendants Castro, Rich, Henderson, Doe, and Barreto, through their intentional acts and conduct, unlawfully restrained Plaintiff's freedom of movement and deprived him of his liberty without legal justification or probable cause. The restraint was complete and effective, as Plaintiff was confined within fixed boundaries established by the Defendants' actions and threats of force, rendering him unable to move freely or escape the subsequent assault perpetrated against him.

85. The unlawful restraint and false imprisonment manifested through multiple coordinated actions by the Defendants, including but not limited to: (a) Defendant Castro's threatening deployment of pepper spray, which created a reasonable apprehension of immediate harmful contact and effectively restrained Plaintiff's movement; (b) the violent and forceful ejection of

Plaintiff from the Metro Bus by Defendants Castro and Henderson, which resulted in Plaintiff's physical containment; and (c) the continued detention of Plaintiff at the scene after he had been rendered immobile from the fall, during which time Defendants Rich, Doe and Barreto maintained physical control over his person without legal authority or justification.

86. At no time during these events did Plaintiff consent to being detained, confined, or restrained by the Defendants. The entire sequence of events occurred against Plaintiff's expressed will and objections, and no legal justification existed for the Defendants' actions.

87. The Defendants' conduct was characterized by actual malice, evil intent, and improper motivation. Their actions demonstrated a willful and wanton disregard for Plaintiff's constitutional rights, human dignity, and physical well-being. The Defendants knew, or should have known, that their actions would result in the unlawful detention and harm of Plaintiff, yet they proceeded with deliberate indifference to these consequences.

88. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, continues to suffer, and will suffer in the future severe and lasting injuries, including but not limited to: (a) significant physical injuries requiring ongoing medical treatment; (b) severe emotional distress and psychological trauma; (c) substantial medical expenses for past and future treatment; (d) loss of enjoyment of life; and (e) other damages to be proven at trial.

89. The injuries sustained by Plaintiff as a result of this false imprisonment are permanent in nature and will require continued medical treatment and therapeutic intervention, resulting in substantial ongoing medical expenses and diminished quality of life.

WHEREFORE, Plaintiff demands judgment against Defendants Castro, Rich, Henderson, Doe, and Barreto, jointly and severally, for compensatory damages in an amount to be determined

at trial, plus punitive damages, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT TEN-NEGLIGENCE
### (Defendant WMATA)

90. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

91. This Court has jurisdiction over this matter pursuant to Md. Code. Ann. Transp. §10-204, and venue is proper in this judicial district pursuant to Md. Code. Ann. Transp. §10-204(80)(a), as a substantial portion of the events or omissions giving rise to this claim occurred within this district.

92. Defendant Washington Metropolitan Area Transit Authority (WMATA) is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia, created by an Act of Congress, responsible for providing safe and reliable public transportation services throughout the Washington metropolitan area.

93. At all times relevant to this action, WMATA owned, operated, maintained, and controlled the MetroAccess bus on which Plaintiff was a lawful passenger. As a common carrier, WMATA owed Plaintiff the highest duty of care to ensure his safety during transport, including protection from foreseeable harm and the provision of safe ingress and egress from its vehicles.

94. WMATA, through its employees and agents, had a specific duty to: (a) ensure the safety of all passengers during their transport; (b) properly train its employees in passenger verification procedures; (c) maintain clear protocols for interaction with law enforcement; (d) protect passengers from unnecessary interference with their lawful use of public transportation; and (e) properly verify and communicate passenger credentials to law enforcement when necessary.

95.On the above-mentioned date, WMATA breached these duties through its employees' actions and omissions, including but not limited to: (a) failing to verify and communicate Plaintiff's valid metro identification card to responding officers; (b) failing to intervene when Plaintiff, a lawful passenger, was being unlawfully removed from the bus; (c) failing to maintain proper protocols for verification of passenger credentials; (d) failing to properly train its employees in appropriate procedures for handling law enforcement interactions; and (e) failing to ensure Plaintiff's safe exit from the vehicle.

96.WMATA's breach of duty directly resulted in Plaintiff being violently removed from the bus, as the bus operator's failure to verify and communicate Plaintiff's valid metro identification created the circumstances that led to Plaintiff's forceful ejection and subsequent injuries.

97.WMATA knew or should have known that its failure to properly train employees, maintain appropriate protocols, and ensure proper communication with law enforcement regarding passenger credentials could result in serious injury to passengers, yet failed to take reasonable steps to prevent such occurrences.

98.As a direct and proximate result of WMATA's negligence, Plaintiff has suffered and continues to suffer severe injuries, including but not limited to: (a) significant physical injuries requiring ongoing medical treatment; (b) severe emotional distress and psychological trauma; (c) substantial medical expenses for past and future treatment; (d) loss of enjoyment of life; and (e) other damages to be proven at trial.

99.The injuries sustained by Plaintiff as a result of WMATA's negligence are permanent in nature and will require continued medical treatment and therapeutic intervention, resulting in substantial ongoing medical expenses and diminished quality of life.

100. WMATA's negligence falls within the specific exception to its sovereign immunity as the injuries occurred in connection with the operation of its bus service, an area where WMATA has expressly waived immunity pursuant to Section 80 of the WMATA Compact.

WHEREFORE, Plaintiff demands judgment against Defendant WMATA for compensatory damages in an amount greater than $75,000, plus costs, and such other relief as this Court deems just and proper.

### COUNT ELEVEN- VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (Defendant WMATA)

101. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

102. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. WMATA, as a recipient of substantial federal financial assistance during fiscal year 2023 and at all times relevant to this complaint, is subject to Section 504's requirements and prohibitions.

103. Plaintiff Damon Wilson is a qualified individual with a disability who was legally entitled to utilize WMATA's public transportation services. Mr. Wilson was regarded as having a disability by WMATA, by virtue of having a valid Metro Smart Access Smart Trip Card, which explicitly evidenced his status as a disabled individual qualified to access WMATA's services and accommodations. This special access card is specifically issued to individuals with disabilities to ensure their equal access to public transportation services.

104.WMATA, through its agents and employees, discriminated against Mr. Wilson solely by reason of his disability by: (a) failing to recognize and honor his valid disabled access card; (b) refusing to verify the legitimacy of his disability credentials when presented; (c) subjecting him to heightened and unwarranted scrutiny despite his proper documentation; (d) wrongfully accusing him of fare evasion despite clear evidence of his valid disability access credentials; and (e) forcibly excluding him from public transportation services for which he was properly qualified and authorized to use.

105.The discrimination manifested in WMATA's denial of Mr. Wilson's right to access public transportation services despite his presentation of valid disability credentials. When Mr. Wilson attempted to demonstrate his lawful right to access the service by showing his Metro ID Card with his name, ID number, and expiration date, WMATA's officers deliberately ignored this documentation and instead demanded his removal from the bus, effectively denying him access to public transportation solely due to their refusal to acknowledge his disability credentials.

106.WMATA's conduct reflects a systemic failure to properly train and supervise its officers regarding the rights of disabled passengers and proper verification of disability credentials. The failure of supervising officers, including Sergeant Rich, to intervene or correct the discriminatory conduct, even after being presented with evidence of Mr. Wilson's valid disability status, demonstrates a pattern of institutional indifference to the rights of disabled passengers.

107.As a direct and proximate result of WMATA's discriminatory conduct and violations of Section 504, Mr. Wilson has suffered the denial of his right to access public transportation services, emotional distress, and humiliation. The subsequent wrongful prosecution based on these discriminatory actions further compounded the harm and damages suffered by Mr. Wilson by further denying his right to equal access to public transportation services.

108.These actions and omissions by WMATA and its employees were undertaken with deliberate indifference to Mr. Wilson's federally protected rights and with reckless disregard for the probability that he would be deprived of his civil rights. The discriminatory conduct was intentional, malicious, willful, and wanton, demonstrating a reckless and callous indifference to Mr. Wilson's federally protected rights under Section 504.

WHEREFORE, Plaintiff Damon Wilson demands judgment against Defendant WMATA in an amount exceeding $25,000,000 in compensatory damages,  punitive damages in the amount of $10,000,000, attorneys' fees and costs pursuant to 29 U.S.C. § 794a, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

Kim Parker

_____

Kim Parker, Esquire
AIS No.: 9312160035
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

COUNSEL FOR PLAINTIFF

### **JURY TRIAL PRAYER**

Plaintiff prays a jury trial on all counts stated herein.

Kim Parker

_____

Kim Parker, Esquire
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF COMPLIANCE WITH MD RULE
## 20-201(f)(1)(B) AND 1-322.1

I, Kim Parker, Esquire, certify, pursuant to Maryland Rule 1-322.1, that the this pleading does not include any individual's Social Security number, taxpayer identification number, or the alpha or numeric characters of a financial or medical account identifier and does not contain "restricted information" as defined in Rule 20-101(f)(1)(B).

*Kim Parker*

Kim Parker, Esquire
Counsel for Plaintiff