IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **DAMON B. WILSON**  **Plaintiff,** vs. **PRINCE GEORGES COUNTY GOVERNMENT** and **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** and **METRO OFFICER CASTRO** And **METRO OFFICER HENDERSON** And **METRO SERGEANT RICH** And **METRO OFFICER BARRETO** And **METRO OFFICER JOHN DOE** **Defendants.** | **Case No.: 8:25-cv-1312** |

**MEMORANDUM OF LAW IN SUPPORT OF CASTRO AND RICH'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**I.      INTRODUCTION**

On April 23, 2025, Plaintiff filed a Third Amended Complaint in Prince George's County Circuit Court, naming Prince George's County Government, Washington Metropolitan Area Transit Authority ("WMATA") and three WMATA police officers in their individual and official capacity as defendants. WMATA was served with the Third Amended Complaint on April 15, 2025 (Plaintiff apparently served WMATA with the Third Amended Complaint and prior two versions of the Complaint one week prior to the Third Amended Complaint being filed in the Circuit Court). WMATA removed this action to the United States Court for the District of Maryland on April 23, 2025, the same day that Plaintiff filed the Third Amended Complaint in the Circuit Court.

On October 9, 2025, in response the parties' motions pertaining to issues of early discovery and of service for the remaining three Metro Transit Police Officers, the Court ordered that WMATA provide the relevant police report from the alleged incident to Plaintiff's counsel. The Court ordered that Plaintiff had an additional 90 days, i.e., January 9, 2026, to complete service.

Counsel for WMATA sent Plaintiff's counsel the police report to Plaintiff's counsel immediately upon receipt of the Court order. The police report named Officer Castro and **Officer L. Harris** as the arresting officers. The police report did not name Officer Henderson anywhere in the police report. *See* Henderson's Motion for Summary Judgment. ECF # 24. As to Defendant MTPD Officer Barreto, counsel for Defendants

2

provided a declaration from WMATA's human relations department stating the officer's employment with WMATA had ended several months prior to the incident alleged in Plaintiff's Complaint and that he was not employed as a WMATA police officer on December 11, 2023. Plaintiff voluntarily dismissed Officer Barreto. *See* Notice of Voluntary Dismissal, ECF # 21.

Counsel for WMATA obtained consent from officers Castro, Henderson, and Rich to allow her to accept service on their behalf. Counsel for WMATA informed Plaintiff's counsel that she would accept service of process on behalf of the officers by certified mail sent to her office.

On November 25, 2025, Plaintiff sent a copy of the Maryland Circuit Court Third Amended Complaint, without any summons, by certified mail to undersigned counsel to serve Officers Castro, Sgt. Henderson, and Sgt. Rich. Plaintiff did not include a summons from the United States District Court of Maryland to serve the officers, via undersigned counsel. More than 90 days have passed since the Court granted Plaintiff an enlargement of time to serve the officers.

In his Third Amended Complaint, Plaintiff alleges the following counts against some or all of the three officers: battery (Count One); assault (Count Two); defamation per se (Count Three); malicious prosecution (Count Four); negligence (Count Five); gross negligence (Count Six); intentional infliction of emotional distress (Count Seven); violations of Articles 24 and 26 of the Maryland Declaration of Rights (Count Eight); and, false imprisonment (Count Nine).

Officer Castro moves to dismiss the complaint against him for insufficiency of

3

service; alternatively, he also moves to dismiss Counts One, Three, Four, Five, Six, Seven and Eight, in part. Sgt. Rich moves to dismiss the complaint against him for insufficiency of service; alternatively, he also moves to dismiss all counts against him (Three, Five through 9). Officer Henderson, by separate motion for summary judgment, moves to dismiss the complaint in full against because as he was not involved in the incident with Plaintiff at all.

## II.    FACTS[1]

Plaintiff alleges that on December 11, 2023, he boarded a WMATA Metrobus in Landover, Maryland, located in Prince George's County, Maryland   3rd Am. Compl., ¶ 14 (ECF # 1-3). MTPD Officer Castro, dressed in plainclothes, approached Plaintiff to inform him that he did not witness Plaintiff pay his fare when he boarded. *Id*. at 16-19. Officer Castro displayed his law enforcement credentials to Plaintiff during this interaction. *Id*. at ¶ 17. A failure to pay the fare on a Metrobus is a misdemeanor, for which a criminal citation is issued, similar to a traffic ticket.[2]   Officer Castro requested that Plaintiff deboard the bus in order to write Plaintiff the citation. *Id*. at ¶¶ 19, 40. Plaintiff refused to deboard, and Officer Castro told Plaintiff he would use mace on

---

[1] Defendants must accept, as required in a 12(b)(6) motion, the alleged facts will be construed by this Court in Plaintiff's favor and in a favorable light, and therefore accepts them in this context; however, Defendants reserve the right to contest any and all facts outside of their motion to dismiss as well as in any subsequent dispositive motion.

[2] *See* Prince George's County Code of Ordinance, Section 20A-102(a)(9) (It shall be unlawful for any … person in a rail transit station located within the corporate (designated) limits of Prince George's County, Maryland to … [k]nowingly enter or leave a fare-paid area of a rail transit station without paying the established fare or presenting a valid transfer for transportation on a public passenger vehicle….); *see also* Section 20A-104 (Any person who violates any provision in Section 20A-102 … shall be deemed guilty of a misdemeanor ….); *see also* Section 20A – 101(a)(3) (A Rail Transit Station is a regular stopping place for pick-up and discharge of passengers in … the fare paid areas and enclosed areas of the … Washington Metropolitan Area Transit Authority.)

Plaintiff if he refused to get off the bus. *Id*. at ¶ 20. Plaintiff got up to exit and as he approached the door, he alleges that another MTPD officer, Henderson, pushed Plaintiff off the bus. *Id*. at ¶ 21. Sgt. Rich came after the ticket was issued and is not alleged to have engaged in any action against Plaintiff.

### III.   STANDARD OF REVIEW

A motion under Rule 12(b)(4) concerns the form of the process while a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004, Supp. 2016); *see Archie v. Booker*, DKC-14-0330, 2015 WL 9268572, at *2 (D. Md. Dec. 21, 2015). Service of process is a condition precedent to the court exercising personal jurisdiction over a defendant. *Koehler v. Dodwell*, 152 F.3d 304, 206 (4th Cir. 1998). Once a defendant contests service, the plaintiff has the burden of establishing the validity of service pursuant to Fed. R. Civ. P. 4. *O'Meara v. Waters*, 464 F.Supp. 2d 474, 476 (D.Md. 2006).

A Rule 12(b)(1) motion challenges a court's subject-matter jurisdiction. *Hutcherson v. WMATA*, No. CIV. 08-3044-RWT, 2009 WL 2168998, at *1 (D. Md. July 16, 2009). A governmental entity may assert its sovereign immunity via a motion to dismiss under 12(b)(1). *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002). On such a motion, a court considers only the pleadings; it accepts the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Star Sci. Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md. 2001)). That favorable light does not alter the fact that a plaintiff still has the burden of persuasion. *Smith*, 290 F.3d at 205. The court

5

will grant the motion if the material jurisdictional facts are undisputed, and if the defendant can prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). If a court lacks subject-matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2018). Nevertheless, "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009).

**IV.   ARGUMENT**

    **A. All Claims Against The Two Officers Must Be Dismissed For Insufficient Process.**

The determination of whether there has been proper service under 12(b)(4) and 12(b)(5) implicates Federal Rule of Civil Procedure 4. A summons must be served with a copy of the Complaint. *See* Fed. R. Civ. P. 4(c)(1); *Danik v. Hous. Auth. Of Balt. City*, 396 Fed. App'x 15, 16 (4th Cir. 2010) (per curiam). No summons was attached to, or accompanied the Complaint mailed to counsel; nor is there any record on the Court's docket showing any request from Plaintiff to the Court to reissue any summons for the Defendants after the case was removed to federal court. More than 90 days have passed

6

since the Court's Order of October 10, 2025, granting Plaintiff an additional 90 days to effect service on the individual police officers. *See* ECF # 18.

### B. Claims Against MTPD Officers In Their Official Capacities, Such As Plaintiff Has Asserted Against Castro and Rich, Are Barred By WMATA's Sovereign Immunity and Must Be Dismissed Pursuant to 12(b)(1).

MTPD officers Castro and Rich are named in their individual as well as their official capacities. *See* Third Amended Complaint ("3rd Am. Compl."), ECF # 1-3 ¶ 2. Suits brought against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

WMATA may invoke its defenses, including sovereign immunity, on the individual officers' behalf when they are sued in their official capacity. In *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945) (*overruled on other grounds*), the Supreme Court said: "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." WMATA has not waived its immunity for governmental functions. *See* Section IV.A, *supra*.

In a decision from this Court, a plaintiff sued the WMATA Chief of Police in his official capacity; the Court held that suit was barred by WMATA's sovereign immunity. *Davis v. Pavlik*, 2020 WL 7489011, at *2 (D. Md., 2020). Similarly, in *Cutchin v. District of Columbia*, 174 F. Supp. 3d 427, 431 (D.D.C., 2016), the United States District Court for the District of Columbia dismissed Plaintiff's claims against MTPD officers who were sued

7

in their official capacity because the claims were barred by WMATA's sovereign immunity. *See also Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006) (District Court dismissed suit against the District of Columbia's Chief of Police, sued in his official capacity, because suit failed to state a claim upon which relief could be granted).

Thus, Defendants Casto and Rich, sued in their official capacity, request that Plaintiff's claims against them in their official capacity be dismissed.

C. **Plaintiff's Battery Claim (Count One) Must Be Dismissed As A Matter of Law Against Officer Castro Pursuant to 12(b)(6)**

Plaintiff asserts a battery claim against Officer Castro (not against Sgt. Rich) which fails to state a claim upon which relief may be granted. "A battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll,* 355 Md. 593, 600, 735 A.2d 1096 (1999) (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965)). An officer is not liable for battery if he or she used a reasonable amount of force when effecting an arrest. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018) (citing *Ashton v. Brown*, 339 Md. 70, 660 A.2d 447, 471 n.24 (1995)).

Here, Plaintiff does not even allege that Defendant Castro engaged in any physical contact with Plaintiff at all, rendering moot any further discussion regarding whether the force used was reasonableness or not. Indeed, the only person who Plaintiff alleges physically contacted and/or touched him is Officer "Henderson." *See* 3rd Am. Compl., ECF # 1-3, ¶¶ 30-34. Wherefore, Plaintiff's battery claim against Officer Castro must be dismissed as a matter of law.

D. **Plaintiff's Claim of Defamation (Count Three) Per Se Must Be Dismissed Under 12(b)(6) As to Both Castro and Rich.**

Plaintiff alleges Officer Castro defamed him by falsely accusing him of not paying his fare, a misdemeanor. *Id*. at ¶ 48 - 49. There are two problems with Plaintiff's claim. First, Plaintiff has not alleged any facts showing he suffered an injury from the alleged defamatory statement. *Id*. at ¶ 50. Second, Maryland jurisprudence makes clear that there is no "there is no 'defamation by arrest' cause of action in Maryland." *Thacker v. City of Hyattsville,* 135 Md. App. 268, 314, 762 A.2d 172 (2000). Under Maryland law, an officer cannot be pursued for defamation simply because the officer announced the basis of the detention and/or the arrest in the course of a criminal investigation.

Further, under Maryland law, a defamation claim requires that Plaintiff show facts that establish four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli,* 424 Md. at 306 (internal quotations omitted).

A plaintiff must still show evidence of damages even when claiming defamation *per se*. *See Indep. Newspapers, Inc. v. Brodie,* 407 Md. 415, 441–42, 966 A.2d 432 (2009) (noting that instances of both defamation *per se* and defamation *per quod* require proof of injury to establish *prima facie* case of defamation). Because Plaintiff makes no claim of an injury from the allegedly defamatory statement, Officer Castro is entitled to dismissal on this claim.

### E. Plaintiff's Claim of Malicious Prosecution (Count Four) Must Be Dismissed As To Both Officers Castro and Rich

9

The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff. *See DiPino v. Davis,* 354 Md. 18, 59, 729 A.2d 354, 373 (1999); *Montgomery Ward v. Wilson,* 339 Md. 701, 714, 664 A.2d 916, 922 (1995).

Plaintiff himself agrees that his proceeding was "initiated through the Prince George's County State's Attorney's office," and therefore, not meeting the first requirement of the four necessary elements of this claim. *See* 3rd Am. Compl., ECF # 1-3, ¶ 53. For these reasons, Court Four must be dismissed as to both Castro and Rich.

### F. Plaintiff's Claim of Negligence (Count Five) and Gross Negligence (Count Six) Must Be Dismissed As To Both Officers Castro and Rich.

Plaintiff has asserted both negligence and gross negligence against Casto and Sgt. Rich. To state a *prima facie* case of negligence, "a plaintiff must allege facts demonstrating (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *McNack v. State*, 398 Md. 378, 394, 920 A.2d 1097 (2007) (quoting *Remsburg v. Montgomery*, 376 Md. 568, 582, 831 A.2d 18 (2003)) (internal quotations omitted). When a negligence is asserted against a police officer, the Court of Appeals has held that police do not owe an enforceable duty to the general public. *Muthukumarana v. Montgomery Cnty.*, 805 A.2d 372 (2002). This is because when, either by common law or

10

by statute, there is a duty imposed upon a public entity to the public at large, this duty at large is not enforceable in tort. *Id.* A duty between a police officer and an individual may exist only when there is a "special relationship." *Williams v. Mayor & City Council of Baltimore*, 753 A.2d 41 (2000). Here, there is no "special relationship" because plaintiff does not – and cannot – allege that any MTPD police officer was acting specifically to protect Plaintiff and thereby induced Plaintiff's specific reliance on the officer's protection. *Fried v. Archer*, 775 A.2d 430, 442-443 (2001).

Further, none of Plaintiff's allegations even sound in negligence, but in intentional torts. Plaintiff asserts that: (a) the officers "unjustly physically confronted" him; (b) used excessive force; (c) detained him against his will; and (d) threatened him with bodily harm. *See* 3rd Am. Compl., ECF # 1-3, at ¶ 60. Plaintiff uses the same allegations which support his claims of assault and battery, to support his negligence claim. *Id.*

Further, as Plaintiff acknowledges, Sgt. Rich arrived at the scene of the incident *after* the alleged confrontation and pushing had occurred; none of these intentional tort allegations pertain to Sgt. Rich, whom Plaintiff alleges only that he arrived at the scene *after* the alleged confrontation and pushing had occurred. *Id.* at ¶ 25.

Police officers are public officials who enjoy public official immunity and will not be liable for claims of negligence or gross negligence, absent malice.

> The actions of police officers within the scope of their law enforcement function are quintessential discretionary acts. *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346–47, 278 A.2d 71 (1971); *Boyer v. State,* 80 Md.App. 101, 560 A.2d 48 (1989), *vacated in part,* 323 Md. 558, 594 A.2d 121 (1991). In the absence of any showing of malice, public officials acting within the scope of their official duties while performing

> discretionary functions are thus free from liability. *Bradshaw v. Prince George's County,* 284 Md. 294, 302–04, 396 A.2d 255 (1979), *overruled in part by James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980); *Robinson,* 262 Md. at 347, 278 A.2d 71.

*Williams v. Prince George's Cnty.*, 685 A.2d 884, 896 (Md.App.,1996)

Malice has been defined as the performance of an act without legal justification or excuse and with an evil or rancorous motive influenced by hate, the purpose of which is to deliberately and willfully injure another. *H & R Block v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975), *overruled in part by Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992). Plaintiff has made no such allegations against Castro or Rich.

In Maryland, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences without the exertion of any effort to avoid them." *Crumb v. McDonald Corp.,* No. DKC 15-1719, 2016 WL 759213 *5 (D. Md. February 26, 2016) *quoting Barbe v. Pope,* 402 Md. 157, 187; 935 A.2d 699, 716 (2007). "Put another way, gross negligence is … when a [person] is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Murphy-Taylor v. Hofman,* 968 F. Supp. 2d 693, 739 (D. Md. 2013) *quoting Newell v. Runnels,* 407 Md. 578, 638; 967 A.2d 729, 638 (2009).

In *Boyer,* the Maryland Court of Appeals held that a "plaintiff [ ] must have pled *facts* showing that [the trooper] acted with a wanton and reckless disregard for others …." *Boyer v. State,* 594 A.2d 121, 132 (1991) (internal citations omitted). The *Boyer* court noted:

> The complaint stated that Trooper Titus was grossly negligent in pursuing Farrar, a suspected drunk driver, at an excessively high rate of speed

12

> through a heavy traffic area; in continuing to recklessly pursue defendant
> Farrar at extremely high and dangerous rates of speed; in failing to activate
> immediately all of the emergency equipment on his police car so as to warn
> other motorists of the foreseeable dangers to their health and safety created
> by defendant Titus's negligent and reckless pursuit; and in otherwise failing
> to adhere to the acceptable police procedures and policies in attempting to
> apprehend defendant Farrar.

*Boyer,* 323 Md. At 580; 584 A.2d at 132. The court held that an officer's pursuit of a fleeing vehicle at a high rate of speed on a crowded street without warning other cars by employing his emergency equipment were insufficient allegations to plead a cause of action for gross negligence under Maryland law.

Plaintiff asserts claims of gross negligence against Defendants Castro and Rich but fails to allege any factual allegations of malice that must be present to support either a negligence or gross negligence claim. Sgt. Rich was not even present for any alleged assault or battery. Defendant Casto is only alleged to have required that Plaintiff leave the bus in order to write him a citation. Thus, Defendant Castro and Rich request that this Court grant summary judgment in their favor on Plaintiff's negligence and gross negligence claim.

### G. Plaintiff's Claims of Intentional Infliction of Emotional Distress (Count Seven) Against Castro and Rich Must Be Dismissed As A Matter of Law

Plaintiff has failed to allege any facts against Castro and Rich that meet the strict standards of proof of an intentional infliction of emotional distress case. Under Maryland law, the four essential elements of the tort of intentional infliction of emotional distress ("IIED") are: "1) the conduct must be intentional or reckless; 2) the conduct must be extreme and outrageous; 3) there must be a causal connection between the wrongful conduct and the

13

emotional distress; and 4) the emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

As explained by the Court of Appeals, IIED requires elements of proof *beyond* those that are found in the tort's name:

> The extraordinary feature of the tort ... is its insistence upon extreme and outrageous conduct. In fact, this element is, in large respect, the entire tort. It both limits the reach of the tort and dominates the proof of its elements. The outrageous requirement means there is no liability simply for the intentional infliction of emotional distress. **If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless not liable unless his or her conduct is also extreme and outrageous.**

*Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 12 (1992)(emphasis added).

To constitute extreme and outrageous, the Court of Appeals stated that:

> We reemphasized that the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Id.* at 670, 607 A.2d 8 (citing *Batson v. Shiflett,* 325 Md. 684, 734–35, 602 A.2d 1191 (1992)).

The outrageousness of the conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). Plaintiff's allegations fall short. In Paragraphs ¶¶ 73-75 of his Complaint, he states that he suffered "severe emotional distress" and was humiliated." No other allegations are offered. Plaintiff's claims, at best, are recycled descriptions of the elements found in the tort's name – what the Court of

14

Appeals has already held to be insufficient. *See Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby,* 607 A.2d. at 12. Plaintiff's simple reference to emotional distress does not rise to the level of what the Court of Appeals has held "should be used sparingly" for "truly outrageous conduct." Plaintiff's bare bones assertion of some emotional distress fails to include any outrageous conduct by either Castro or Rich – another fatal flaw in Plaintiff's claim.

Plaintiff's allegations fail to rise to the level of IIED, and Defendants Castro and Rich request that this Court dismiss Plaintiff's IIED claim and grant judgment in their favor.

H. **Plaintiff's Claims Under Article 24 of the Marland Declaration of Rights (Count Eight) Must Be Dismissed As to Castro and Rich and as to Rich for Claims Under Article 26.**

Plaintiff has alleged claims under both Articles 24 and 26 of the Maryland Declaration of Rights. It has been established that Article 24 protects the same rights as the Fourteenth Amendment, and Article 26 protects the same rights as those protected under the Fourth Amendment. *See Hayes v. City of Seat Pleasant,* 2010 WL 3703291, at *4 (D. Md. Sept. 16, 2010) ("Article 24 protects substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures; courts therefore construe the provisions *in pari materia* with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively."); *See also Cortez v. Prince George's Cnty. Maryland,* 31 Fed. Appx. 123, 130 (4th Cir.2002); *Braun v. Maynard,* 2010 WL 1375172 (D. Md. Mar. 31, 2010). Plaintiff's cause of action is premised exclusively on allegations of force and/or an unlawful detention to write him a criminal citation. Nothing in the pleadings remotely suggest Plaintiff alleges a cause of action for substantive Due Process deprivations under Article 24. Because

Article 24 is not applicable to the claims of this case, Defendants Castro, and Rich move that Count Eight's claims under Article 24 of the Complaint be dismissed.

Further, Sgt. Rich moves that Plaintiff's claims under Article 26 be dismissed. Sgt. Rich arrived after Plaintiff had left the bus and received his ticket. Thereafter, Plaintiff was taken away by EMTS in an ambulance. Plaintiff does not have any factual basis to allege any claim under Article 26 against Sgt. Rich.

Wherefore, Officer Castro moves to dismiss Count Eight in part, as it pertains to a claim under Article 24, and Sgt Rich moves to dismiss Count Eight in full, as to any claims against him under Article 24 or Article 26.

### I. **Count Nine's Claim of False Imprisonment Against Sgt. Rich Must Be Dismissed Pursuant to 12(b)(6)**

A claim of false imprisonment requires that Plaintiff prove: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification. *See Manikhi v. Mass Transit Admin.,* 758 A.2d 95, 112 (2000). The only allegations Plaintiff asserts against Sgt. Rich are that Sgt. Rich agreed to investigate Plaintiff's claims of assault. *See* 3rd Am. Compl., ECF # 1-3, ¶ 25. These allegations are insufficient as a matter of law to support a claim of false imprisonment. Wherefore, Sgt. Rich moves to dismiss Plaintiff's claims of false imprisonment for failure to state a claim.

### V. CONCLUSION

Wherefore, for the reasons set forth herein, and for such and other good cause as the Court may decide, Castro and Rich move for dismissal of Plaintiff's Complaint for insufficient process, as well as for Plaintiff's failure to state claims upon which relief may be granted.

Respectfully Submitted,

*/s/ Janice L. Cole*
Janice L. Cole #09562
Senior Counsel II
WMATA
300 7th St., S.W.
Washington, D.C. 20024
(202) 962-2543
(202) 962-2550
Email: jlcole@wmata.com

Counsel for Rich and Castro.