IN THE UNITED STATES DISTRICT COURT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| **DAMON WILSON** | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *  Civil Action No.: **8:25-CV-01312-PX** |
| | * |
| **PRINCE GEORGES COUNTY** | * |
| **GOVERNMENT** et al. | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

NOW COMES, Damon Wilson (the "Plaintiff"), by and through undersigned counsel respectfully opposes Defendants' Motion to Dismiss filed by Defendants Castro and Rich, and in support thereof states as follows:

**PRELIMINARY STATEMENT**

Contemporaneously with the filing of this response, Plaintiff has submitted a Motion for Leave to file a Fourth Amended Complaint. *See Record.* This motion is brought to ensure that all parties are properly identified and to clarify facts.

Should the Court grant Plaintiff leave to file his Fourth Amended Complaint, the Defendants Motion to Dismiss will be *moot*, as the Fourth Amended Complaint will be the operative pleading in the case. Plaintiff incorporates the arguments raised his Motion for Leave with his responses, as if herein restated.

**STATEMENT OF FACTS**

On December 11, 2023, Plaintiff Damon Wilson, a disabled individual, boarded a Metro Bus in Prince George's County, Maryland, a move that marked the beginning of a distressing series of events that would alter his day significantly. Mr. Wilson possessed a valid Metro Smart Access

Smart Trip Card, which aligned with his legal entitlement to board and ride the public transit system without the burden of fare evasion. *Id*. Upon entering the bus, Mr. Wilson complied with all expected protocols. He proceeded to find a seat, demonstrating orderly and appropriate behavior as a passenger. Choosing a seat directly across from the rear of the bus, Mr. Wilson settled in comfortably, prepared for his journey ahead. Compl. ¶ 15.

An unidentified individual, later revealed to be Defendant Castro, approached Mr. Wilson. Defendant Castro was dressed in plain clothes devoid of any visible insignia that would indicate his law enforcement status, adding an element of confusion and uncertainty to the interaction. He tapped Mr. Wilson on the shoulder in a manner that disrupted Mr. Wilson's peace. Compl. ¶ 16. Identifying himself as an Officer, Defendant Castro displayed his law enforcement credentials in a manner that was more intimidating than reassuring. The display of authority came with an unfounded accusation, as Defendant Castro claimed that Mr. Wilson had engaged in fare evasion, a serious allegation given the context and amounting to a direct affront to Mr. Wilson's integrity as a lawful passenger. Compl. ¶ 17.

Taken aback by the accusation, Mr. Wilson immediately refuted this allegation, retrieving and presenting his Metro ID Card with urgency. The card prominently displayed his name, ID number, and expiration date, serving as unequivocal proof of his lawful status and qualification for the disabled fare. Compl. ¶ 18. Rather than acknowledging the validity of Mr. Wilson's ID Card, Defendant Castro remained obstinate and unyielding. He coldly asserted that because Mr. Wilson had not "flashed" his card in a timely manner, he must disembark the bus immediately, threatening that failure to comply would result in a charge of fare evasion. Despite having no factual basis for such a claim, Defendant Castro insisted on the unjust demand. Compl. ¶ 19.

Notably, throughout this troubling exchange, Defendant Castro did not take any steps to verify the status or validity of Mr. Wilson's credentials, disregarding his responsibility as an officer to confirm facts prior to making accusations against a citizen. When Plaintiff protested, Defendant Castro displayed a can of mace, and threatened to mace Mr. Wilson if he did not leave. Compl. ¶ 20. Feeling frustrated yet compelled to avoid further conflict, Mr. Wilson complied with Defendant Castro's demands and began to exit through the rear exit of the bus. However, as he navigated down the two steps leading from the bus, the situation escalated dangerously. With no provocation, an unidentified male, later identified as Defendant Officer Henderson placed his hands on Plaintiff and forcefully shoved him from behind. Compl. ¶ 21.

The unwarranted shove sent Plaintiff crashing violently forward, causing him to strike his head against the hard glass panel of the bus, a sudden and barbaric act that startled other passengers and further exacerbated the tension. Instead of de-escalating the situation, Defendant Henderson ratcheted up the aggression. Emboldened by his colleague's actions, he then shoved Mr. Wilson again, this time forcefully pushing him to the ground, where Mr. Wilson landed helplessly on the unforgiving pavement. Compl. ¶ 22. Shortly thereafter, Defendant Rich arrived at the scene. Despite hearing Mr. Wilson's repeated assertions that he was a valid Metro cardholder, Defendant Rich indicated he would investigate the assault and battery that had just occurred against Mr. Wilson, showing a dismal disregard for the obvious misconduct of the involved officers. Compl. ¶ 25. In a shameful turn of events, even after Plaintiff had provided verification of his valid card, the Defendants resolved to charge him with fare evasion, a clear miscarriage of justice that compounded his humiliation. Compl. ¶ 26.

Following this series of events, Plaintiff was transported via ambulance to a nearby hospital, overwhelmed by pain and confusion. Medical evaluations revealed serious injuries, including a

diagnosis that necessitated a recommendation for a hip replacement due to the extent of the trauma sustained during the aggressive encounter. Compl. ¶ 27. As a direct consequence of the excessive force exerted by the Defendants, coupled with the psychological trauma endured throughout this ordeal, Mr. Wilson experiences both physical pain and profound emotional distress. The injuries he has sustained, compounded by the exacerbation of pre-existing mental health and physical conditions, have left him facing ongoing suffering, fear, and anxiety. Compl. ¶ 28.

Following the issuance of the citation, the Prince Georges County State's Attorney's Office initiated criminal prosecution against Mr. Wilson for fare evasion in the District Court of Maryland for Prince Georges County. The State's Attorney's Office proceeded with the prosecution based exclusively on the citation document, without obtaining any corroborating evidence. The prosecuting attorney did not interview Officers who issued the citation, did not secure the available surveillance footage from where the alleged incident occurred, did not obtain witness statements from Metro employees or passengers present during the incident, and did not verify the electronic fare payment records from Mr. Wilson's registered SmartTrip card. Subsequently, on April 2, 2024, all charges were dismissed against Mr. Wilson in the District Court of Maryland for Prince Georges County on the request of the State's Attorneys Office. Compl. ¶ 29.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the issue is not whether the plaintiff "will ultimately prevail ... but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).[1] A court must "accept as true all of the

---

[1] Accord *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations."); *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."); *Quinteros v. Sparkle Cleaning, Inc*., 532 F. Supp. 2d 762, 767 (D. Md. 2008) ("The issue in reviewing the sufficiency of … a complaint is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.").

factual allegations contained in the complaint." E.*I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). It must read the complaint as a whole, *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 463 (D. Md. 2013); *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 680 (D. Md. 2012), construing it liberally in the plaintiff's favor, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 & n.4 (4th Cir. 1993), and drawing all reasonable inferences in his favor. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). "To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018).

A district court "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions. A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will not be dismissed "as long as [the plaintiff] provides sufficient detail … to show that he has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014); accord *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). See also *Goldstein v. Metro. Reg'l Info. Sys., Inc., No.* TDC-15-2400, 2016 WL 4257457, at *9 (D. Md. Aug. 11, 2016) (citing authorities); accord *Baten v. McMaster*, 967 F.3d 345, 368 (4th Cir. 2020) ("[W]here Plaintiffs offer a novel legal theory that can best be assessed after factual development, dismissals at such an early stage are disfavored.").

Ultimately, a plaintiff's burden at the 12(b)(6) stage "is quite minimal," *Doe v. Chesapeake Med. Sols., LLC*, No. SAG-19-2670, 2019 WL 6497962, at *5 (D. Md. Dec. 2, 2019), whereas a defendant bears a "heavy burden." *Augenstein v. McCormick & Co.*, 581 F. Supp. 452, 456 (D. Md. 1984). In all, a Rule 12(b)(6) motion "should be granted only in very limited circumstances." *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).

**ARGUMENT**

**A. Defendants have notice of this proceeding and are not prejudiced, thus Mr. Wilson should be allowed additional time to serve Defendants.**

The Defendants seek to dismiss the Plaintiff's well-plead Third Amended Complaint ("TAC"), alleging improper service. Rule 4(m) provides the district court with discretion to extend the time for service of the complaint and summons, even if the plaintiff does not show good cause for failing to serve within the initial ninety-day period. If good cause is shown, the court must grant the extension. *Gelin v. Shuman*, 35 F.4th 212, 220. Here, the facts demonstrate both good cause for any delay and a complete lack of prejudice to the Defendants, making an extension of time both justified and equitable.

On October 9, 2025, this Court ordered Defendants to provide Plaintiff's counsel with all relevant documents to facilitate service. Defense counsel subsequently agreed, on October 15, 2025, to accept service on behalf of the Defendants, as reflected in **Exhibit A.** On November 14, 2025, Plaintiff's counsel sent defense counsel a courtesy copy of the service package that was sent Certified Mail, as shown in **Exhibit B**.

In subsequent communications, Plaintiff's counsel learned became aware that Defendants intended to file a Motion to Dismiss. Plaintiff's Counsel immediately sought to confer with defense counsel to streamline the litigation and avoid unnecessary motion practice. Specifically, Plaintiff's

counsel asked for the basis of Defendants' anticipated motion and expressed willingness to amend the complaint to address any potentially valid arguments. Specifically, the communication stated:

> **"What is the basis of your client's Motion to Dismiss? For judicial economy purposes, we may be able to contour the Fourth Amended Complaint , if we agree with some of the arguments raised in your client's motion".**

*See Exhibit C.*

Despite these efforts, no response was received, and Defendants proceeded to file a motion rather than resolve the service issue cooperatively.

It should be noted that this case was removed from the Circuit Court for Prince George's County, Maryland on April 23, 2025, and no new summonses were issued after removal. Had undersigned counsel received a response to her efforts to confer, Plaintiff would have promptly sought reissuance of summonses to address any procedural concerns within the timeframe provided by the Court. Defendants' refusal to confer and their choice to pursue a motion to dismiss, after the time for Plaintiff to cure any defects in service, demonstrates bad faith. Defendants, seek to dismiss this case on technical grounds rather than the merits, which runs afoul of established legal precedent. See *Harris v. S. Charlotte Pre-Owned Auto Warehouse*, LLC, No. 3:14-CV-00307-MOC, 2015 WL 1893839, at *5 (W.D.N.C. Apr. 27, 2015) (citing *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 472 (4th Cir. 1993)) ("Federal courts are here to resolve cases on the merits, to avoid procedural defaults whenever possible, and to issue the sanction of dismissal only in extreme cases of plaintiff misconduct.").

Granting the Defendants' motion would unjustly prejudice Plaintiff by requiring him to refile his complaint and repeat the service process, needlessly burdening both the parties and the Court. In contrast, granting a brief extension will not prejudice Defendants, who already have actual notice and have participated in this matter. Allowing additional time for proper service promotes

judicial efficiency and ensures that the case is resolved on its substance rather than on avoidable procedural issues.

For these reasons, Plaintiff respectfully requests that the Court grant a short extension to permit reissuance of the summons and service upon defense counsel, as such relief is both warranted by the record and required by the interests of justice, or in the alternative, find proper service, and deny the motion.

**B. Plaintiff Has Filed a Motion for Leave to File a Fourth Amended Complaint Which Cures the Individual Capacity Argument**

Plaintiff proposed Fourth Amended Complaint voluntarily dismisses the claims against the individual defendants in their official capacity. As a result, Defendants' Motion to Dismiss on this ground will be moot.

**C. Plaintiff Has Stated a Claim Against Defendant Castro For Battery**

Defendant Castro has moved to dismiss on the grounds that the Complaint fails to state a cause of action for battery. Under Maryland law, a battery is established where a person intends to cause harmful or offensive contact with another, and does so without that person's consent. See RESTATEMENT (SECOND) OF TORTS § 13 & cmt. d (1965). The required conduct must be an affirmative act by the defendant. *Saba v. Darling*, 320 Md. 45, 49, 575 A.2d 1240, 1242 (1990); see also PROSSER & KEETON, THE LAW OF TORTS § 9, at 39 (5th ed. 1984). Battery may be committed by direct or indirect contact with the plaintiff, including circumstances where the defendant sets in motion a force that ultimately causes the offensive contact. PROSSER & KEETON, THE LAW OF TORTS § 9, at 40 (5th ed. 1984); *Nelson v. Carroll*, 355 Md. 593, 600-601.

Plaintiff's Complaint specifically alleges that Defendant Castro committed battery through unwelcome physical contact. The Complaint describes that the bus environment was calm until a

disturbance arose, at which point an individual later identified as Defendant Officer Castro approached Plaintiff. Castro was in plain clothes, without any identifying insignia, and tapped Plaintiff on the shoulder in a manner that disrupted Plaintiff's peace. See Compl. ¶16. This allegation was expressly incorporated into Count One of the Complaint, which states: "Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein." Compl. ¶30. These factual allegations, taken as true at the pleading stage, are sufficient to support a claim for battery.

Moreover, the proposed Fourth Amended Complaint further clarifies the underlying facts to ensure there is no confusion regarding Plaintiff's battery claims against Defendant Castro. Plaintiff is only required to provide a short and plain statement of the claim under the Federal Rules. Defendant's Motion to Dismiss the battery claim should therefore be denied.

### D.  Defendant's actions constitute Defamation *per se,* thus damages are presumed.

Although Defendants assert police officers may not be sued for Defamation in Maryland, Defendants' motion only attacks one element of a defamation claim, which is the damages requirement. Defamation elements include: (1) that the defendant made a defamatory communication--i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. *Shapiro v. Massengill*, 105 Md. App. 743, 772. The determination of whether an alleged defamatory statement is *per se* or *per quod* is a matter of law. *Id*. at 773. Where the statement is actionable *per se*, damages are presumed

if a plaintiff can demonstrate constitutional malice; the jury may award general damages for false words that are actionable *per se,* even in the absence of proof of harm. *Id*. at 774.

Consistently [Maryland] Court ha[ve] held that words which falsely charge a person with or impute to him the commission of a crime for which he is liable to be prosecuted and punished are actionable *per se*. *American Stores Co. v. Byrd*, 229 Md. 5, 13. As such, if this Honorable Court finds that the false allegations that Plaintiff committed fare evasion are defamation *per se*, then this Honorable Court cannot dismiss the defamation count for failure to plead damages. Moreover, Plaintiff's defamation count pleads that he suffered from "emotional distress and damage to his reputation" Compl. ¶48. Plaintiff has stated a claim for defamation per-se. Moreover, emotional distress "capable of objective determination" resulting from tortious conduct (here, assault, battery, false imprisonment, negligence, gross negligence) is actionable. See *Vance v. Vance,* 286 Md. 490, 500-01, 408 A.2d 728, 733-34 (1979) (citing as examples, among other things: depression, loss of appetite, nightmares, distraction from activities); *Alban v. Fiels*, 210 Md. App. 1, 17, 61 A.3d 867, 876 (2013).

Additionally, Plaintiff's proposed Fourth Amended Complaint clarifies and expands upon the factual allegations supporting the *Defamation Per Se* claim. Therefore, Defendant's motion to dismiss Plaintiff's well-pleaded defamation claims should be denied.

### E. Maryland Courts routinely allow Malicious Prosecution actions against police officers.

The Defendants argue that Plaintiff cannot state a claim for Malicious Prosecution against Police Officers. Defendants statement lacks any basis in law, and in fact.

In *Okwa v. Harper, 757 A.2d 118, 130 (Md. 2000*, the court clarified that a plaintiff must show the following to establish the tort of malicious prosecution: 1) the defendant instituted a criminal

proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other then bringing the plaintiff to justice. *Okwa v. Harper*, 360 Md. 161, 183. In *Okwa*, a Plaintiff brough a malicious prosecution claim against the officers who arrested him for disorderly conduct, resisting arrest, and assault. The court held "[a]ppellees do not contest that following Mr. Okwa's arrest by Appellees, he was charged with disorderly conduct, resisting arrest, and assault. It is also uncontested that Mr. Okwa was found not guilty of these charges by the District Court. Thus, facts have been plead that, if proven, satisfy elements 1) and 2) of the tort." *Id*.

Likewise in *Hines*, the court clarified that a police officer can satisfy the first two elements of malicious prosecution. *Hines v. French*, 157 Md. App. 536, 553 (holding "[i]t is not contested that Deputy French issued appellant three traffic citations and, thus, that criminal proceedings were instituted against her." Plaintiff's Complaint has set forth specific fact that support his claims of Malicious Prosecution against the Officer Defendants.  Because as referenced in the third amended complaint[2], police officers can institute criminal proceedings, Defendants' motion should not be granted on this ground. Furthermore, Plaintiff's proposed Fourth Amended Complaint sets forth facts that, at the pleading stage, sufficiently establish a cause of action for Malicious Prosecution against the Defendants.

**F.  Plaintiff may bring a claim for Negligence and Gross negligence.**

Defendants are correct, absent a "special relationship" between police and victim, liability for failure to protect an individual citizen against injury caused by another citizen does not lie against police officers. *Ashburn v. Anne Arundel County*, 306 Md. 617, 628. A proper plaintiff, however,

---

[2] In paragraph 52, the Amended Complaint states" On December 11, 2023, Defendants Castro, Henderson, Rich, and Barreto initiated and maliciously pursued criminal charges against Plaintiff."

is not without recourse. If he alleges sufficient facts to show that the defendant policeman created a "special relationship" with him upon which he relied, he may maintain his action in negligence. *Id*. at 631. In order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection. *Id*.

Defendants entire argument regarding negligence and gross negligence grappled around whether the third amended complaint alleges sufficient facts to show Defendants' acted with malice. Whether or not negligence and gross negligence exists necessarily depends on the facts and circumstances in each case[,]" and "is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached." *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968) (citations omitted). "Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence."

In, *Cooper v. Rodriguez*, 443 Md. 680, 708-709. The Court clarified that gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist." *Id*. at 708.

In this case, Defendants battered, detained, and arrested Plaintiff for fare evasion, even though it was apparent that Plaintiff paid his fare. These actions were an intentional failure to perform a

manifest duty in a reckless disregard of the consequences as affecting the life or property of Plaintiff, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. This is not a case where the facts are so clear as to permit a conclusion as a matter of law, thus a jury should determine whether Defendants' conduct was negligent and grossly negligent.

Furthermore, in Plaintiff's proposed Fourth Amended Complaint he clarifies facts to further support his claims for Negligence and Gross Negligence against the Defendants.

### G.  Plaintiff Has Stated a Claim for Intentional Infliction of Emotional Distress

Defendants move to dismiss Plaintiff's IIED claim on the basis that Plaintiff has failed to state a claim upon which relief can be granted. This argument ignores the factual allegations and legal standards that clearly support Plaintiff's cause of action.

To establish intentional infliction of emotional distress, Plaintiff must allege four elements: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286. Defendants' challenge appears to focus solely on the fourth element, claiming that Plaintiff cannot demonstrate severe emotional distress.

However, severe emotional distress is defined as "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Harris v. Jones*, 281 Md. 560, 572. Here, the Third Amended Complaint sets forth detailed allegations showing that Plaintiff suffered severe emotional distress as a direct and proximate result of Defendants' conduct.

Specifically, Plaintiff endured a physically violent encounter initiated by Defendants, including excessive and unjustified use of force that caused immediate physical pain and injury. This physical trauma is compounded by the psychological torment Plaintiff experienced throughout and following the incident. The public nature of the assault, taking place in front of multiple witnesses, exacerbated Plaintiff's humiliation, fear, and anxiety. Plaintiff's emotional distress is further intensified by the aggravation of pre-existing mental health and physical conditions, which the Defendants' actions worsened.

Plaintiff's ongoing suffering is not a fleeting or trivial condition but rather a profound and enduring state of fear, anxiety, and psychological trauma. This level of distress surpasses what a reasonable person should be expected to endure in a civilized society. The Defendants' conduct marked by threats of chemical incapacitation, physical assault, and false accusations was extreme and outrageous, demonstrating intentional or reckless disregard for Plaintiff's emotional well-being. For an Officer of the Law, to take his foot, and kick a member off of a public bus, than prosecute him, is outrageous and evil, and would be to an ordinary person.

Taken together, these allegations are sufficient to meet the demanding standard for IIED claims. The physical injuries, the psychological effects, and the context of Defendants' conduct establish a clear causal link between their actions and Plaintiff's severe emotional distress. Accordingly, at the pleadings stages of this case, Plaintiff has stated a viable claim for intentional infliction of emotional distress that should survive a motion to dismiss.

H.  **Plaintiff may maintain claims under Article 24 and Article 26 of Maryland's Constitution.**

The Defendants move to dismiss Plaintiff's well-pleaded claims for violation of the Maryland Declaration of Rights, asserting that Plaintiff has failed to state a claim upon which relief can be granted. This argument disregards the detailed factual allegations and established legal standards

that firmly support Plaintiff's cause of action. The Complaint sets forth specific instances where Defendants, acting under color of law, deprived Plaintiff of his constitutional rights guaranteed by Articles 24 and 26 of the Maryland Declaration of Rights. These include unlawful seizure, excessive and unjustified use of force, and malicious prosecution without probable cause. The allegations demonstrate that Plaintiff was seized without reasonable suspicion or justification, subjected to physical violence far exceeding any lawful authority, and deprived of liberty based on false accusations. Moreover, Defendants ignored clear evidence of Plaintiff's innocence and failed to adhere to proper procedures, resulting in significant physical, emotional, and economic harm. Under Maryland law, Article 24 protects against unreasonable or arbitrary governmental actions, encompassing substantive due process and equal protection principles, while Article 26 safeguards individuals from unreasonable searches and seizures. Plaintiff's claims are supported by facts showing that Defendants' conduct was objectively unreasonable, lacked legal justification, and violated Plaintiff's fundamental rights.

The Maryland Constitution does not contain an express equal protection clause, but we nonetheless have held that the principles of equal protection are impliedly guaranteed through Article 24. *Okwa v. Harper*, 360 Md. 161, 203. Because . . . Article 24 is Maryland's analogue to the Fourteenth Amendment of the United States Constitution we may look to federal opinions interpreting the Fourteenth Amendment for guidance when a citizen claims to have been subjected to unreasonable or arbitrary discrimination by a government official. *Id*. The Court first recognized that "all claims that law enforcement officers have used excessive force - - deadly or not - - in the course of an arrest, . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. at 395, 109 S. Ct. at 1871, 104 L. Ed. 2d at 454. To examine a police officer's use of force we take the perspective of a reasonable officer on the scene

of the incident at issue and pay close attention to the particular facts of each case. We consider whether the plaintiff posed an immediate danger to the public or the police and whether the plaintiff was resisting arrest, taking into account that due to the exigency of some circumstances, police officers may be forced to make split second decisions based on incomplete facts. *Id*. at 204. In determining whether a person has been "seized" within the meaning of the fourth amendment the federal courts have focused on whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Gray*, 883 F.2d 320, 322.

In this case, using the 'reasonableness standard', Plaintiff may maintain a claim under Article 24 of the Maryland Constitution. Plaintiff was "seized" while Defendants wrote Plaintiff an illegal ticket for fare evasion. Plaintiff posed no immediate danger to the public or police, and there are no allegations that Plaintiff resisted in any capacity. Plaintiff entire seizure was unreasonable because he was seized for a crime he did not commit. Nonetheless, Plaintiff can maintain a viable Article 24 claim against both Defendants because they both made Plaintiff believe that he was not free to leave.

Maryland's appellate courts have stated that Art. 26 is considered *in pari material* with the Fourth Amendment, such that we accord great respect and deference to the decisions of the United States Supreme Court in interpreting the federal amendment. *Carter v. State*, 367 Md. 447, 458. The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. When police have obtained evidence through a warrantless search or seizure, the State bears the burden to demonstrate that the search or seizure

was reasonable, by establishing the applicability of one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *State v. Carter*, 472 Md. 36, 55. As the third amended complaint details, Plaintiff was seized by Defendants Castro and Rich for fare evasion. Because Defendants cannot articulate any exception which would allow a seizure of Plaintiff he may bring a viable Article 26 claim.

Accordingly, Plaintiff has alleged sufficient facts to withstand dismissal, and the Defendants' motion must be denied.

### I. The Proposed Fourth Amended Complaint Withdraws All False Imprisonment Claims Against Defendant Rich

The Court should deny Defendant Rich's Motion to Dismiss Plaintiff's false imprisonment claims because those claims have been withdrawn in Plaintiff's proposed Fourth Amended Complaint. Upon the Court's acceptance and filing of this amended pleading, the false imprisonment allegations against Defendant Rich will no longer be part of the case, rendering the Motion to Dismiss on this issue moot. This procedural step reflects Plaintiff's intent to narrow the scope of claims and focus on properly supported allegations against the remaining Defendants. Therefore, any motion seeking dismissal of false imprisonment claims as to Defendant Rich should be denied as moot, pending the Court's approval of the proposed amendment.

### CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. The Complaint and the proposed Fourth Amended Complaint contain well-pleaded factual allegations that establish viable claims against Defendants under the applicable legal standards. Plaintiff has demonstrated that the claims are supported by

sufficient facts, show a clear causal connection between Defendants' conduct and Plaintiff's injuries, and raise legitimate issues for judicial resolution.

Denying the Motion to Dismiss will allow this case to proceed on the merits, ensuring that Plaintiff has a full and fair opportunity to present his claims and obtain justice. Granting the motion, on the other hand, would unjustly foreclose Plaintiff's ability to seek redress for the violations of his constitutional rights and the harms suffered as a result of Defendants' misconduct.

Accordingly, Plaintiff respectfully urges the Court to deny Defendants' Motion to Dismiss and permit this action to move forward.

Respectfully submitted,

*Kim Parker*

_____
**KIM PARKER, ESQUIRE**
**FED BAR NO.: 23894**
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

**BRANDON JAMES, ESQUIRE**
**FED BAR NO.: 22125**
The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org

COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I CERTIFY on this 5th day of March, 2026, a copy of the foregoing Response and Opposition to Defendants Motion to Dismiss was sent to all counsel of record via electronic filing.

                                                                                               /s/_____
                                                                                             Kim Parker, Esquire