IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DAMON B. WILSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. No. 8:25-cv-1312-PX |
| | | |
| WASHINGTON METROPOLITAN AREA | | |
| TRANSIT AUTHORITY *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending is Plaintiff Damon B. Wilson ("Wilson")'s motion for leave to file a fourth amended complaint that Defendants, Metro Officers Bryan Castro ("Castro") and Gerald Rich ("Rich"), oppose as futile. ECF Nos. 33 & 37. The Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion to amend is granted in part and denied in part.

I.      **Background**

A.  **Factual Background**

This lawsuit arises from Wilson's interaction with Washington Metropolitan Area Transit Authority ("WMATA") police officers after he allegedly failed to pay the fare for his Metrobus ride. *See* ECF Nos. 4 & 33-3. According to the proposed fourth amended complaint, on December 11, 2023, Wilson, "a disabled individual," boarded a Metrobus with his "Smart Trip Card," which allowed him to ride the bus for free. ECF No. 33-3 ¶ 14. Castro, wearing plain clothes, "tapped [Wilson] on the shoulder," identified himself as a law enforcement officer, and accused Wilson of not paying the fare. *Id.* ¶¶ 13–16. Wilson, in turn, showed Castro his unexpired Smart Trip Card which allowed Wilson to ride without paying the fare. *Id.* ¶ 17. But because Wilson "had not

1

'flashed' his card in a timely manner," Castro demanded that Wilson "disembark the bus immediately." *Id.* ¶ 18. After Wilson refused, Castro pulled out a can of mace, prompting Wilson to exit the bus. *Id.* ¶¶ 19–20.

While Wilson was on the steps of the bus, Officer Lyndon Harris ("Harris") shoved Wilson from behind, causing him to fall and strike his head on the glass panel of the bus. ECF No. 33-3 ¶¶ 20–21. Harris then shoved Wilson a second time, causing him to fall to the ground. Rich arrived at the scene shortly after, and "indicated he would investigate the assault and battery that had just occurred against Plaintiff." *Id.* ¶ 23.

Meanwhile the Defendant officers issued Wilson a citation for fare evasion, and Wilson was transported to the hospital to receive treatment for his injuries. *Id.* ¶¶ 24–25. Fare evasion is a criminal misdemeanor in Prince George's County, punishable by a fine. Ultimately, the charge was dismissed on April 2, 2024. *Id.* ¶ 27. This lawsuit followed.

### B. Procedural History

Wilson, through counsel, initially filed suit in Prince Georges County Circuit Court and next amended the Complaint three times before Defendants removed the case to this Court. ECF Nos. 1 & 1-3. The operative pleading at the time of removal was the Third Amended Complaint, which sued the following officers and entities for the following causes of action:

| Count | Cause of Action | Defendant(s) |
|---|---|---|
| One | Battery | Castro and Henderson |
| Two | Assault | Castro and Henderson |
| Three | Defamation per se | Prince Georges County, Castro, Rich, Henderson, Doe, and Barreto |
| Four | Malicious Prosecution | Prince Georges County, Castro, Doe, Barreto, and Henderson |
| Five | Negligence | Rich, Doe, Castro, Barreto, and Henderson |

| Count | Cause of Action | Defendant(s) |
|---|---|---|
| Six | Gross Negligence | Rich, Doe, Castro, Barreto, and Henderson |
| Seven | Intentional Infliction of Emotional Distress | Castro, Henderson, Rich, Barreto, and Doe |
| Eight | Maryland Declaration of Rights | Prince Georges County, Castro, Henderson, Rich, and Barreto |
| Nine | False Imprisonment | Castro, Rich, Henderson, Doe, and Barreto |
| Ten | Negligence | WMATA |
| Eleven | Rehabilitation Act of 1973 | WMATA |

ECF No. 4.

Wilson also immediately moved to take "limited discovery" so that he could confirm the identities of the officers involved in the incident. ECF No. 6. The Court granted the motion and ordered WMATA to produce the police report for the incident, as well as the "full names and badge numbers," for the officers named in the report and the lawsuit. ECF No. 18.[1] Thereafter, Castro and Rich moved to dismiss certain claims for lack of sufficiency. ECF No. 25.

Once Wilson had a better understanding of the officers' identities and roles, and after a flurry of motions dismissing originally sued parties, Wilson moved for leave to file a Fourth Amended Complaint, alleging the following claims against the identified defendants:

| Count | Cause of Action | Defendant(s) |
|---|---|---|
| One | Battery | Castro and Harris |
| Two | Assault | Castro and Harris |
| Three | Defamation per se | Castro, Harris and Doe |
| Four | Malicious Prosecution | Castro, Rich, Doe and Harris |
| Five | Negligence | Castro and Harris |
| Six | Gross Negligence | Castro, Harris and Doe |
| Seven | Intentional Infliction of Emotional Distress | Castro, Harris and Doe |

---

[1] Wilson also moved to dismiss Officers Henderson and Barreto (ECF Nos. 21 & 29), which the Court granted. Accordingly, the Court now denies Officer Henderson's motion for summary judgment as moot (ECF No. 24).

| Count | Cause of Action | Defendant(s) |
|-------|----------------|--------------|
| Eight | Maryland Declaration of Rights | Castro, Harris and Rich |
| Nine | False Imprisonment | Castro, Harris and Doe |
| Ten | Rehabilitation Act of 1973 | WMATA |

ECF No. 33-3.

As for Castro and Rich, the proposed fourth amended complaint facts are the same as those pleaded in the Third Amended Complaint.[2] ECF No. 33-3. The proposed pleading also eliminates several claims against Rich, proceeding only with Counts IV (malicious prosecution) and VIII (Maryland Declaration of Rights). Nonetheless, Castro and Rich argue that the proposed amendments should be denied as futile for the same reasons that they raised in their motion to dismiss the Third Amended Complaint. ECF Nos. 25 & 37.

The Court approaches this procedural morass as follows. The Court will first take up Wilson's motion for leave to file the Fourth Amended Complaint because Castro and Rich's grounds for opposing the pleading are identical to those raised in the motion pertaining to the Third Amended Complaint. *Compare* ECF No. 25 *with* ECF No. 37. The Court will also independently consider whether the proposed pleading makes plausible the claims against the newly added defendant, Harris. Finally, because the Court concludes that some of the proposed claims survive challenge, it will grant the motion to amend in part, direct Wilson to file a revised Fourth Amended Complaint, and deny the motion to dismiss the Third Amended Complaint as moot.[3]

_____

[2] The Court considers the sufficiency of the claims against the officers solely in their individual capacities because the officers enjoy sovereign immunity for official capacity suits. *Davis v. Pavlik*, Civ. No. GJH-20-0547, 2020 WL 7489011, at *2 (D. Md. Dec. 21, 2020) ("WMATA's police activities are an exercise of governmental function for which WMATA has not waived sovereign immunity. . . . Accordingly, WMATA cannot be sued for torts related to the performance of its police activities. Because Plaintiff brought suit here against [a WMATA police officer] in his official capacity, WMATA's sovereign immunity applies to him as well and bars the claims brought against him.") (internal quotation marks and citation omitted).

[3] Castro and Rich separately seek dismissal for improper service. ECF No. 25-1 at 6–7. Although their counsel had agreed to accept service, Castro and Rich correctly argue that Wilson failed to serve summonses along with the Third Amended Complaint. This failure renders service insufficient. *See* Fed. R. Civ. P. 4(c) ("A summons must be served

## II.    Standard of Review

Amendment of pleadings should be granted liberally, unless the amendment prejudices the defendant, is futile, or was brought in bad faith.  *See* Fed. R. Civ. P. 15(a)(2); *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)).  "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted).  In assessing whether a claim is futile, the Court reviews the cause of action under the same sufficiency standard articulated in Federal Rule of Civil Procedure 12(b)(6).  *Kerrigan v. Bd. of Educ. of Carroll Cnty.*, Civ. No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016).  The Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  The factual allegations must be enough to "raise a right to relief above the speculative level."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

with a copy of the complaint."). *See also Mathies v. Silver*, 266 F. App'x 138, 140 (3d Cir. 2008) (finding a failure to effectuate service where summons was not signed or sealed by Clerk); *Craig v. Melwood Horticultural Training Ctr., Inc.*, No. PWG-13-2742, 2014 WL 3547341, at *2 (D. Md. July 16, 2014) (concluding without "valid summons, no amount of diligence would have allowed [plaintiff] to attempt service on [defendant]"); *Combs v. Shapiro & Burson LLP*, No. GJH-15-846, 2016 WL 1064459, at *4 (D. Md. Mar. 14, 2016) (finding insufficient service where plaintiff did not "provide properly executed summons for each Defendant to the Clerk for signature and seal"); *Clayton v. Islas Transportation, LLC*, No. 8:18-CV-03964-PX, 2019 WL 4805671, at *3 (D. Md. Oct. 1, 2019) ("[Plaintiff's] repeated attempts at service, even if believed, were an exercise in futility when considering that counsel was attempting to serve an improper, unexecuted summons.").  However, because the Court will allow partial amendment of the pleading, the motion to dismiss the Third Amended Complaint for failure to effectuate proper service is moot.  That said, Wilson is forewarned that he *must* effectuate proper service of the revised Fourth Amended Complaint pursuant to the Federal Rules of Civil Procedure.  Failure to effectuate proper service will result in dismissal of the pleading against the affected defendant without further warning.

The Court considers the sufficiency of each count of the proposed fourth amended complaint.

### III.    Analysis

#### A.  Battery – Castro & Harris (Count I)

The proposed amended pleading sues Harris and Castro for battery.  "A battery occurs when one intends a harmful or offensive contact with another without that person's consent," and may occur "through a defendant's direct or indirect contact with the plaintiff."  *Nelson v. Carroll*, 735 A.2d 1096, 1099–1100 (Md. 1999).  "[I]in the absence of physical contact, a battery claim must fail."  *Wallace v. Poulos*, 861 F. Supp. 2d 587, 597 (D. Md. 2012) (citing *Griffith v. Truette*, 866 F. Supp. 254, 257 (D. Md. 1994)).  Also, "intent is required; mere accidental or inadvertent conduct that results in harmful contact with another does not rise to the level of assault or battery." *Wolfe v. Columbia Coll., Inc.*, No. GJH-20-1246, 2021 WL 2805952, at *13 (D. Md. July 6, 2021). As applied to law enforcement, "an officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest."  *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018).  However, if the officer "uses excessive force, or force greater than is reasonably necessary under the circumstances," a battery claim may proceed.  *Id.* (quoting *French v. Hines*, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008)).

As to Castro, the pleading avers that the officer battered Wilson by "touching" him on the shoulder to get his attention.  ECF No. 33-3 ¶ 30.  This claim fails.  No facts make plausible that a mere tap on the shoulder constitutes "harmful contact."  Nor do any facts reflect the requisite intent to cause such harmful contact.  Accordingly, the claim cannot proceed as to Castro, and so amendment is denied as futile.

Harris compels a different outcome.  The proposed fourth amended complaint avers that even though Wilson was exiting the bus in compliance with Castro's orders, Harris shoved him twice from behind, causing Wilson to hit the ground with such force that Wilson ended up in the hospital for his injuries.  The contact was plainly excessive and "harmful," and bore no reasonable relation to legitimate law enforcement action.  Thus, the Court will allow Wilson to amend the pleading, adding Harris to Count I.

### B.  Assault – Castro & Harris (Count II)

Although "the term 'assault' is often used interchangeably with battery to embrace conduct that constitutes battery," they are distinct causes of action under Maryland common law.  *Jones v. Chapman*, Civ. No. ELH-14-2627, 2017 WL 2472220, at *24 (D. Md. June 7, 2017) (citing *Lamb v. State*, 613 A.2d 402, 407 (Md. Ct. Spec. App. 1992)).  "An assault is a consummated battery, an attempted battery, or placing a victim in reasonable fear of an imminent battery."  *Id.* (citing *Snyder v. State*, 63 A.3d 128, 135 (Md. Ct. Spec. App. 2013)).  As with battery, however, law enforcement officers will not be liable for assault in the context of a legitimate detention or arrest.  *See infra* pp. 15–16; *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) ("The parallel state law claim of assault and battery is subsumed within the federal excessive force claim[.]"); *Calloway v. Lokey*, 948 F.3d 194, 205 (4th Cir. 2020) (concluding that because "corrections officers did not violate the Fourth Amendment in conducting a strip search of [plaintiff]," the district court was correct in determining that state law assault claim failed).

The proposed pleading avers that Castro assaulted Wilson by displaying a mace can when ordering Wilson off the bus.  Castro, however, only pulled out the mace after Wilson refused to follow Castro's lawful command to leave the bus.  ECF No. 33-3 ¶¶ 18, 47.  Viewing the facts most favorably to Wilson, a reasonable officer in Castro's position could have legitimately, even if incorrectly, perceived Wilson to be evading the fare and then refusing to disembark.  Castro's

brief display of the mace in response cannot be construed as unreasonable or excessive, and thus cannot constitute an assault.  The claim fails and amendment is denied as futile.

In contrast, the proposed fourth amended complaint makes plausible that Harris battered Wilson.  Because assault, as a matter of law, can coexist with a completed battery, the assault claim will proceed as to Harris.

### C.  Defamation Per Se – Castro, Harris & "Doe" (Count III)

A defamation claim will survive challenge if some facts make plausible the defendant "(1) made a defamatory statement to a third person, (2) the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007) (citing *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007)).  Under Maryland law, where the alleged false statements alone "'impute the defamatory character,' such that the plaintiff need not plead additional facts demonstrating their defamatory nature," the plaintiff has alleged defamation per se.  *Solomon Foundation v. Christian Fin. Resources, Inc.*, Civ. No. JRR-22-00993, 2023 WL 3058321, at *4 (D. Md. Apr. 24, 2023) (quoting *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp 3d 355, 366 (D. Md. 2017)).  An officer's accusation of suspected crime, even if mistaken, does not by itself constitute defamation. *See, e.g.*, *Crouch v. City of Hyattsville*, Civ. No. DKC 09-2544, 2012 WL 6019296, at *7 (D. Md. Nov. 30, 2012) ("Aside from asserting that the arrest hurt his reputation in the community, Plaintiff has not proffered any evidence that he suffered any injury as a result of the alleged defamation.").  Indeed, "there is no 'defamation by arrest' cause of action in Maryland." *Thacker v. City of Hyattsville*, 762 A.2d 172, 196 (Md. Ct. Spec. App. 2000).

The proposed pleading avers that Castro had defamed Wilson by "publicly and falsely accus[ing] [him] of fare evasion, a criminal offense under Maryland law."  ECF No. 33-3 ¶ 46.

But according to the pleading, Wilson, in fact, had not paid the fare. Thus, Castro's public statement that Wilson had not paid the fare was technically *true*. The error lies in whether Castro should have accepted Wilson's representation that he did not have to pay the fare. Similarly, Castro's ultimatum that Wilson must leave the bus or face a fare evasion charge was not false. And as for Harris, nothing makes plausible he made *any* statements at all. ECF No. 33-3 ¶ 50. Accordingly, because the proposed pleading fails to allege any actionable false statements, amendment is denied as futile.

Wilson also includes a "John Doe" officer in this and several other claims. "The designation of a John Doe defendant is generally not favored in the federal courts," permitted only when "the identity of the alleged defendant is not known at the time the complaint is filed" but with discovery is likely to become known. *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000) (table decision). But the Court previously granted Wilson expedited discovery precisely to identify the officers who participated in the incident. Nor does anything in the proposed fourth amended complaint suggest that some other "unnamed" officer had been involved in the incident, save for possibly another officer who waited with Wilson pending transport to the hospital. As to this, an officer's mere presence at the scene does not, without more, amount to a restriction of Wilson's liberty sufficient to plausibly aver a false imprisonment claim. Thus the John Doe officer is dismissed from the suit entirely.

### D. Malicious Prosecution – Castro, Harris, and Rich (Count IV)

The proposed pleading next avers that the officers are liable for malicious prosecution because they cited Wilson for fare evasion. ECF No. 33-3 ¶ 58. To make plausible the claim, some facts must show "1) the defendant instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable

9

cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice." *Hines v. French*, 852 A.2d 1047, 1057 (Md. Ct. Spec. App. 2004). Castro and Rich argue that the claim fails because Prince Georges County, not they, initiated the criminal prosecution against Wilson. ECF No. 25-1 at 10. However, "an individual may still be liable when he 'inspire[s] in any fashion a criminal proceeding against the (plaintiff) within the contemplation of the law of torts.'" *Crouch*, 2012 WL 6019296, at *3 (quoting *Smithfield Packing Co. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006)). Whether Defendant officers "inspired" a criminal proceeding against Wilson when they issued the citation depends on whether the officers supplied the prosecution with "information which [they] knew to be false and so unduly influenced the authorities" in pursuing baseless charges. *Smithfield Packing Co. v. Evely*, 905 A.2d 845, 855 (Md. Ct. Spec. App. 2006).

In that respect, the proposed pleading merely avers that Wilson had displayed to the officers a Smart Trip Card and argues from there that any evasion charge must have been based on knowingly false information. This claim as pleaded is too barebones. Wilson clearly did not pay the fare which formed the basis for the fare evasion charge. What the officers knew or did not know about the validity of the card he presented to them is left for speculation. To be sure, no facts support that the officers pursued the fare evasion charge with "malice" or some other nefarious purpose. Naked legal conclusions to the contrary will not suffice. ECF No. 33-3 ¶ 62. Thus, without more, the malicious prosecution fails and amendment is denied.

### E.  Negligence and Gross Negligence – Castro & Harris (Counts V & VI)

The sufficiency of the negligence claims against the officers turns on the scope of public official immunity. *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 297 (D. Md. 2020). Public official immunity bars suit for common law negligence where "(1) the actor is a public official, rather than a mere government employee or agent; (2) the alleged tortious conduct

occurred while the actor was performing discretionary, as opposed to ministerial, acts; [and] (3) the actor committed the relevant acts within the scope of his official duties." *Id.* (citing *Thomas v. City of Annapolis*, 688 A.2d 448, 454 (Md. Ct. Spec. App. 1997)) (internal quotation marks omitted). Immunity, however, does not extend where the official acted with malice or gross negligence. *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024). Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . . . " *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (quoting *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999)). Gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . . ." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)).

It is undisputed that as law enforcement officers, Castro and Harris enjoy public official immunity when performing traditional law enforcement functions. *Johnson*, 452 F. Supp. 3d at 297 (citing *Robinson v. Bd. of Cty. Comm'rs for Prince George's Cty.*, 278 A.2d 71, 74 (Md. 1971)). Thus, a mere negligence claim as articulated in Count V cannot proceed.[4]

As to the gross negligence claim (Count VI), no facts make plausible that Castro had been grossly negligent in suspecting Wilson of fare evasion. ECF No. 33-3 ¶ 71. Indeed, Wilson had not paid the fare. Further, Castro's suspicion arising from the time Wilson took to "flash" the Smart Trip Card is, at best, a mistake. No facts reflect that Castro deliberately, with "ill-will or fraud" (malice) rejected Wilson's reason for not paying, or that Castro failed "to perform a

---

[4] Wilson also contends in reply that he enjoys a "special relationship" with the officers that would defeat public official immunity. ECF No. 34 at 11–12. But the special relationship exception applies only where an officer fails "to protect an individual citizen against injury caused by *another citizen*." *Williams v. Mayor & City Council of Baltimore*, 753 A.2d 41, 64 (Md. 2000) (emphasis added). *Cf. Gray v. Kern*, 124 F. Supp. 3d 600, 611 (D. Md. 2015), *aff'd in part, vacated in part sub nom.* 702 F. App'x 132 (4th Cir. 2017) ("The question of a 'special relationship' in Maryland law arises when a victim brings an action against a police officer for an injury caused by a third person."). Nowhere is this claim made, and so this exception to the immunity doctrine does not apply.

manifest duty" with "reckless disregard" (gross negligence). Thus, the gross negligence claim fails as to Castro.

Harris once again commands a different outcome. Harris' unprovoked shoving of Wilson without lawful basis, resulting in significant injuries, minimally amounts to gross negligence. ECF No. 33-3 ¶ 79. Harris exerted unnecessary and gratuitous force on Wilson with reckless disregard for Wilson's safety. Accordingly, the Court will allow amendment to assert a gross negligence claim against Harris.

### F.    Intentional Infliction of Emotional Distress – Castro & Harris (Count VII)

Although Maryland recognizes the tort of intentional infliction of emotional distress ("IIED"), the claim is reserved for only the most outrageous conduct deemed unacceptable in a civilized society. *See Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 607 A.2d 8, 12 (Md. 1992). To make plausible an IIED claim, some facts must show the defendant's extreme and outrageous acts caused the plaintiff severe emotional distress. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 114 (Md. 2000). The plaintiff's "distress" must be "so severe that no reasonable man could be expected to endure it." *Thacker*, 762 A.2d at 197 (internal quotation marks and citation omitted). This standard sets a high bar. *See B.N.S. by Stuart v. Brito*, Civ. No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). The proposed fourth amended complaint fails to meet it.

As to Castro, it is hard to take seriously the contention that his brief display of mace and the tense exchange with Wilson amounts to "extreme and outrageous" conduct exceeding "*all* possible bounds of decency." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (quoting Restatement [Second] of Torts § 46, cmt. d) (emphasis added). Likewise, Harris' shoving of Wilson, while serious, is insufficient to sustain an IIED claim. *See, e.g.*, *McGowan v. Prince George's Cnty., Maryland*, 401 F. Supp. 3d 564, 572 (D. Md. 2019) (intentional infliction of

emotional distress claim failed where four plain clothed officers grabbed plaintiff's wrist, twisted it behind his back, pushed him against the car, and struck him on the back of his legs, causing significant injury).  Nor has Wilson averred that his injuries amount to the kind of intense and substantial interference with his daily functioning necessary to make the claim plausible.  *See Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007).  *See also Manikhi*, 758 A.2d at 115 ("Nowhere does the complaint state with reasonable certainty the nature, intensity or duration of the alleged emotional injury.").  The claim fails as a matter of law and will not proceed.

### G. Violation of Maryland Declaration of Rights – Castro, Harris and Rich (Count VIII)

Count VIII combines violations of Articles 24 & 26 of the Maryland Declaration of Rights. In Maryland, Articles 24 and 26 "are read in pari materia with the Fourteenth and Fourth Amendments to the United States Constitution, respectively."  *Warren v. Montgomery Cty.*, Civ. No. PJM 09-2510, 2012 WL 3779165, at *5 (D. Md. Aug. 30, 2012) (citing *Davis v. DiPino*, 708 A.2d 357, 367 (Md. Ct. Spec. App. 1998)).  Taking the Article 24 claim first, to state an equal protection violation, some facts must make plausible that the plaintiff "was treated differently from others who were similarly situated, and that the unequal treatment was the result of discriminatory animus."  *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citations omitted); *see also Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he [or she] has been treated differently from others with whom he [or she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").  If the plaintiff plausibly makes this showing, the Court next must "determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  *Morrison*, 239 F.3d at 654 (citations omitted).

When reading the claim most favorably to Wilson, no facts support the claim. It is instead a mishmash of several other legal liability theories articulated elsewhere in the pleading. ECF No. 33-3 ¶¶ 96–100. But nothing shows how Wilson had been treated differently than similarly situated riders, or that such disparate treatment was on account of his disability. *See SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Virginia*, 91 F.4th 715, 720 (4th Cir. 2024). Amendment to include an Article 24 claim, therefore, is futile and must be denied.[5]

Next, Article 26, like the Fourth Amendment, "bars police officers from using excessive force to seize a free citizen." *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). An officer may use only that force which is necessary to bring a citizen under lawful control. *See Graham*, 490 U.S. at 396–97. An excessive force claim asks whether a reasonable officer in the defendant's shoes would have known that the force he used had been excessive given the circumstances at hand, and without regard to the officer's "'underlying intent or motivation.'" *Dolgos*, 884 F.3d at 179 (quoting *Graham*, 490 U.S. at 397); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). The inquiry focuses on "the moment that the force is employed," *Henry*, 652 F.3d at 531, to ascertain whether the totality of the circumstances supports that the use of force against the citizen as reasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). The Court considers the severity of the crime; whether the individual

---

[5] The pleading also obliquely suggests a substantive due process violation. ECF No. 33-3 ¶ 98. But such a claim lies only where arbitrary official action is so egregious as to be "conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Accordingly, some facts must show that the officer "intended to injure in some way unjustifiable by any government interest," that goes beyond "*negligently* inflicted harm . . . ." *Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 205 (4th Cir. 2008) (emphasis added) (quoting *Lewis*, 523 U.S. at 849). No facts pull either Rich or Castro within the ambit of such a claim. And for Harris, the claim is pleaded as one for "excessive use of force." ECF No. 33-3 ¶ 101. The claim otherwise is so scattershot that the Court struggles to understand what else Wilson intends to aver. To survive challenge, more is required. The substantive due process claim, to the extent this is what Wilson meant to plead, will not proceed.

poses an immediate threat to the officers or others' safety; and whether the individual is "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 399; *see also Lawhon v. Edwards*, 477 F. Supp. 3d 428, 445 (E.D. Va. 2020), *aff'd sub nom. Lawhon v. Mayes*, No. 20-1906, 2021 WL 5294931 (4th Cir. Nov. 15, 2021) (citing *Jones*, 325 F.3d at 527).

Although the claim is poorly pleaded, it survives as to Harris, who gratuitously shoved Wilson despite compliance with Castro's command to leave the bus. Nothing Wilson said or did would require the application of such force to bring him under control. As to the remaining officers, however, the claim fails. Rich never used any force on Wilson. Nor can Castro's brief "display" of a mace to secure Wilson's exist off the bus alone amount to excessive use of force. ECF No. 33-3 ¶ 19. *Contrast Wilson v. Flynn*, 429 F.3d 465, 467 (4th Cir. 2005) (no violation of Fourth Amendment right against excessive force where officer "punched" plaintiff in the face and sprayed him with mace after plaintiff was repeatedly told to put hands behind back), *and Karadi v. Jenkins*, 7 F. App'x 185, 194–95 (4th Cir. 2001) (no violation of Fourth Amendment right against excessive force where officer "threatened her with mace," and "twisted her arm behind her back and pushed her against the wall for the purpose of handcuffing"), *with Cowles v. Peterson*, 344 F. Supp. 2d 472, 482–83 (E.D. Va. 2004) (violation of Fourth Amendment right against excessive force where officer struck plaintiff in the head twice with a can of mace despite plaintiff not attempting to flee). Accordingly, Wilson may pursue the Article 26 claim only as to Harris. Amendment is otherwise denied.

### H.  False Imprisonment – Harris & Castro (Count IX)

To make plausible this claim, some facts must show a defendant officer deprived the plaintiff his liberty without consent and without legal justification. *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 527 (D. Md. 2016). Deprivation of liberty must amount to a "direct restraint" of

movement that compels the plaintiff to "remain where he does not wish to remain, or to go where he does not wish to go." *Mason v. Wrightson*, 109 A.2d 128, 131 (Md. 1954). *See also Mahan v. Adam*, 124 A. 901, 905 (Md. 1924) ("Any exercise of force, or threat of force, by which in fact the other person is . . . compelled to remain where he does not wish to remain . . . is an imprisonment."); *Amaral v. Amaral*, No. 0086, Sept. Term 2014, 2015 WL 9257028, at *10 (Md. Ct. Spec. App. Dec. 17, 2015).

Viewing the proposed amended complaint facts most favorably to Wilson, no officer ever "compelled" him to remain "where he [did] not wish to remain." *Mason*, 109 A.2d at 131. Although the proposed pleading suggests the officers had detained Wilson in advance of his transport to the hospital, ECF No. 33-3 ¶¶ 25, 110, no facts reflect Wilson had been held against his will. Rather, the pleading makes it equally plausible that officers stayed with Wilson to facilitate timely transport to the hospital for care. *Id.* Without more, the claim fails, and amendment is denied as futile.

## I. Section 504 of the Rehabilitation Act – WMATA (Count X)

Lastly, the proposed pleading reasserts a disability discrimination claim against WMATA pursuant to the Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794. To make plausible the claim, some facts must show that WMATA "excluded" Wilson "from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted). The proposed pleading avers that WMATA discriminated against Wilson by "(a) failing to recognize and honor his valid disabled access card; (b) refusing to verify the legitimacy of his disability credentials when presented; (c) subjecting him to heightened and unwarranted scrutiny despite his proper documentation; (d) wrongfully accusing him of fare

16

evasion despite clear evidence of his valid disability access credentials; and (e) forcibly excluding him from public transportation services for which he was properly qualified and authorized to use." ECF No. 33-3 ¶ 118.

Wilson had previously averred this claim in the Third Amended Complaint, and WMATA did not challenge the sufficiency of it in its prior motion to dismiss. ECF No. 8. Nor does WMATA challenge the claim now. Accordingly, the claim will proceed.

## IV.    Conclusion

For the reasons discussed, the motion for leave to file the Fourth Amended Complaint (ECF No. 33) is granted in part and denied in part. The Fourth Amended Complaint will be filed against the following defendants for the following causes of action:

| Cause of Action | Defendant |
|---|---|
| Battery | Harris |
| Assault | Harris |
| Gross Negligence | Harris |
| Article 26 Excessive Force | Harris |
| Rehabilitation Act of 1973 | WMATA |

Further, because this is Wilson's *fifth* attempt at pleading the claims sufficiently, all claims against Defendants Rich and Castro are dismissed with prejudice. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

Within **seven days** from the date of this Opinion and Order, Wilson shall file a revised Fourth Amended Complaint consistent with this decision, eliminating causes of action that the Court denied as futile and renumbering the claims. WMATA shall answer the Fourth Amended Complaint, and Defendant Harris, after proper service, shall answer or otherwise respond to the Fourth Amended Complaint within the time set forth in the accompanying order. The remaining motions (ECF Nos. 24 and 25) are denied as moot.

A separate order follows.

6/2/2026 _____                                    _____/s/_____
Date                                                                                 Paula Xinis
                                                                                     United States District Judge