**UNITED STATES DISTRICT COURT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **DAMON B. WILSON**<br>6904 Stirling Street<br>Fort Washington, Maryland 20744<br><br>      P<small>LAINTIFF</small><br>-versus-<br><br>**WASHINGTON METROPOLITAN AREA**<br>**TRANSIT AUTHORITY (WMATA)**<br>Serve: Patricia Y. Lee, Resident Agent<br>600 5th Street, N.W.<br>Washington, DC 20001<br><br>**LYNDON HARRIS**<br>c/o Janice L. Cole, Esquire<br>Law Department 7E<br>Washington Metropolitan Area Transit<br>Authority<br>PO BOX 44390<br>Washington, D.C. 20026-4390<br><br>      D<small>EFENDANTS</small>' | CASE NO.:  **8:25-CV-01312-PX** |

**FOURTH AMENDED COMPLAINT AND JURY TRIAL PRAYER** [1]

**NOW COMES**, Damon Wilson (the "Plaintiff") by and through his attorneys, K<small>IM</small> P<small>ARKER, AND</small> L<small>AW</small> O<small>FFICES OF</small> K<small>IM</small> P<small>ARKER</small>, P.A., B<small>RANDON</small> J<small>AMES AND</small> T<small>HE</small> J<small>AMES</small> L<small>EGAL</small> G<small>ROUP</small>, LLC,  and sues the aforementioned Defendants', Plaintiff is suing the aforementioned defendants jointly and severally. Plaintiff incorporates all previously filed complaints, as if herein restated, and in support thereof, states the following:

**INTRODUCTORY STATEMENT**

---

[1] The Complaint is currently being amended in accordance with the Court's  June 10, 2026 Order, which granted in part Plaintiff's Motion for Leave to File a Fourth Amended Complaint. The amendments are being made to fully comply with the directives set forth in the Court's Order.

1.Metro Transit Authority ("MTA") has aggressively engaged in fare evasion initiatives aimed explicitly at addressing, what they allege to be pressing issue of fare evasion on public transportation systems throughout the region. Under Maryland law, fare evasion constitutes a criminal violation, and offenders are subject to civil penalties that can escalate to as much as $100. It is particularly noteworthy that during the period spanning from January 1, 2016, to February 5, 2018, law enforcement officials conducted over 30,000 stops based on suspected fare evasion violations, highlighting a significant and ongoing enforcement effort. In the year 2016 alone, a total of 5,360 citations or summonses were issued to individuals accused of fare evasion. This number saw a staggering increase in 2017, escalating to 13,762 citations[2], reflecting an intensified crackdown on fare violations. Following the implementation of the new safety initiative on November 1, 2022, Metro Police adopted a more aggressive stance in targeting individuals suspected of fare evasion, conducting numerous stops and enforcement actions. Disturbingly, there have been numerous accounts describing the use of excessive force and actions characterized as barbaric by Metro Transit Police Officers, culminating in several officers facing conviction for egregious violations of civil rights[3]. The Plaintiff in this case seeks justice and appropriate compensation for the significant and wrongful acts inflicted upon him by the Defendant, asserting that his behavior was not only unprofessional but also unlawful, resulting in considerable harm.

## **JURISDICTION**

2. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under Maryland State law.

---

[2] https://ggwash.org/view/69171/a-new-report-highlights-the-stark-racial-disparities-in-metro-fare-enforcem
[3] https://www.justice.gov/opa/pr/former-dc-metro-transit-police-officer-sentenced-federal-civil-rights-violation-beating

3. All conditions precedent to filing this action have been satisfied prior to the filing of the instant complaint.

**<u>PARTIES</u>**

4. The Plaintiff, Damon Wilson, is a resident of Prince George's County, Maryland. At all relevant times, Plaintiff was a business invitee on the Metro Bus, and as such, Defendants owed a duty of care to him.

5.At all relevant times, the Defendant, Washington Metropolitan Area Transit Authority (hereinafter referred as "WMATA")  d/b/a Metro Transit Police Department  ("MTPD') was  is at all times relevant herein is a interstate compact agency, by the terms of its enabling legislation, an agency and instrumentality under the Laws of the State of Maryland, District of Columbia, and Virginia codified in Maryland Code, Transportation Article § 10-204. At all times relevant herein owned and operated the MetroAccess bus involved in the aforementioned incident.

6.Defendant Lyndon Harris (hereinafter referred to as "Defendant Harris") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Harris is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Harris owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Harris acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Harris had a non-delegable duty to the Plaintiff. Defendant Harris was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Harris

was acting under color of law as a member of the MTPD. Defendant Harris is being sued in his individual capacity.

## FACTS RELEVANT TO EACH COUNT

7. On December 11, 2023, Plaintiff Damon Wilson boarded a Metro Bus in Prince George's County, Maryland, a move that marked the beginning of a distressing series of events that would alter his day significantly. Plaintiff, a disabled individual, possessed a valid Metro Smart Access Smart Trip Card, which aligned with his legal entitlement to board and ride the public transit system without the burden of fare evasion.

8. Upon entering the bus, Plaintiff complied with all expected protocols. He proceeded to find a seat, demonstrating orderly and appropriate behavior as a passenger. Choosing a seat directly across from the rear of the bus, Plaintiff settled in comfortably, prepared for his journey ahead.

9. The atmosphere on the bus was generally calm until a disturbance erupted. An unidentified individual, later revealed to be Officer Bryan Castro, approached Plaintiff. This officer was dressed in plain clothes devoid of any visible insignia that would indicate his law enforcement status, adding an element of confusion and uncertainty to the interaction. He tapped Plaintiff on the shoulder in a manner that disrupted Plaintiff's peace.

10. Castro identified himself as an Officer, and displayed his law enforcement credentials in a manner that was more intimidating than reassuring. The display of authority came with an unfounded accusation, as Castro claimed that Plaintiff had engaged in fare evasion, a serious allegation given the context and amounting to a direct affront to Plaintiff's integrity as a lawful passenger.

11. Taken aback by the accusation, Plaintiff immediately refuted this allegation, retrieving and presenting his Metro ID Card with urgency. The card prominently displayed his name, ID

number, and expiration date, serving as unequivocal proof of his lawful status and qualification for the disabled fare.

12.Rather than acknowledging the validity of Plaintiff's ID Card, Officer Castro remained obstinate and unyielding. He coldly asserted that because Plaintiff had not "flashed" his card in a timely manner, he must disembark the bus immediately, threatening that failure to comply would result in a charge of fare evasion. Despite having no factual basis for such a claim, Castro insisted on the unjust demand.

13. Notably, throughout this troubling exchange, Officer Castro did not take any steps to verify the status or validity of Plaintiff's credentials, disregarding his responsibility as an officer to confirm facts prior to making accusations against a citizen. When Plaintiff protested, Officer Castro displayed a can of mace, and threatened to mace plaintiff if he did not leave.

13.Feeling frustrated yet compelled to avoid further conflict, Plaintiff complied with Castro's demands and began to exit through the rear exit of the bus. However, as he navigated down the two steps leading from the bus, the situation escalated dangerously. With no provocation, an unidentified male, later identified as Defendant Officer Lyndon Harris placed his hands on Plaintiff and forcefully shoved him from behind.

14. The unwarranted shove sent Plaintiff crashing violently forward, causing him to strike his head against the hard glass panel of the bus, a sudden and barbaric act that startled other passengers and further exacerbated the tension. Instead of de-escalating the situation, Defendant Harris ratcheted up the aggression. Emboldened by his colleague's actions, he then shoved Plaintiff again, this time forcefully pushing him to the ground, where Plaintiff landed helplessly on the unforgiving pavement.

15. As Plaintiff lay on the ground, disoriented and in agony, none of the officers present offered any form of assistance or even a semblance of concern regarding Plaintiff's welfare. They stood idly by while Plaintiff endured both physical and psychological suffering, lacking the basic decency expected from individuals sworn to protect and serve.

16. Shortly thereafter, Sergeant Rich arrived at the scene. Despite hearing Plaintiff's repeated assertions that he was a valid Metro cardholder, Sergeant Rich indicated he would investigate the assault and battery that had just occurred against Plaintiff, showing a dismal disregard for the obvious misconduct of the involved officers.

17. In a shameful turn of events, even after Plaintiff had provided verification of his valid card, the Defendant Harris resolved to charge him with fare evasion, a clear miscarriage of justice that compounded his humiliation.

18. Following this series of events, Plaintiff was transported via ambulance to a nearby hospital, overwhelmed by pain and confusion. Medical evaluations revealed serious injuries, including a diagnosis that necessitated a recommendation for a hip replacement due to the extent of the trauma sustained during the aggressive encounter.

19. As a direct consequence of the excessive force exerted by Defendant Harris, coupled with the psychological trauma endured throughout this ordeal, Plaintiff Damon Wilson experiences both physical pain and profound emotional distress. The injuries he has sustained, compounded by the exacerbation of pre-existing mental health and physical conditions, have left him facing ongoing suffering, fear, and anxiety.

20. Following WMATA MTPD's issuance of the citation, the Prince Georges County State's Attorney's Office initiated criminal prosecution against Plaintiff for fare evasion in the District Court of Maryland for Prince Georges County. The State's Attorney's Office proceeded

with the prosecution based exclusively on the WMATA MTPD citation document, without obtaining any corroborating evidence. The prosecuting attorney did not interview WMATA MTPD Officers who issued the citation, did not secure the available surveillance footage from where the alleged incident occurred, did not obtain witness statements from Metro employees or passengers present during the incident, and did not verify the electronic fare payment records from Plaintiff's registered SmartTrip card. Subsequently, on April 2, 2024, dismissed all charges against Plaintiff in the District Court of Maryland for Prince Georges County on the request of the State's Attorneys Office.

### COUNT ONE– BATTERY
### (Defendant Harris)

21. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

22. At all times relevant to this action, Defendant was acting within the scope of their duties as Police Officers, and under the color of State law.

23. On or about December 11, 2023, while Plaintiff was lawfully traveling as a passenger on a Metro Bus in Prince George's County, Maryland, he was subjected to unlawful and intentional physical contact by Defendant Officer Harris. Without any provocation or justification, Officer Harris forcefully shoved Plaintiff from behind as Plaintiff attempted to exit the bus.

24. The actions of Defendant Harris caused Plaintiff to lose his balance, resulting in a violent collision with the bus interior and causing Plaintiff to strike his head against the glass panel. The force applied and the manner of contact were excessive, unjustified, and infringed upon Plaintiff's rights to bodily integrity and personal security.

25. The actions of the Defendant Harris shove, were intentional, harmful, and offensive, and undertaken with the purpose of asserting control and inflicting harm or discomfort.

26. Plaintiff did not consent to any physical contact by the Defendants and his actions were not justified under any circumstances.

27. Defendant's conduct was malicious, carried out with reckless disregard for Plaintiff's rights and condition, and demonstrated an evil motive or intent to harm.

28. Therefore, Defendant is liable for battery against Plaintiff due to his unlawful, intentional, malicious, and reckless conduct.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering in the amount of $10,000,000, as well as punitive damages in the amount of $5,000,000, costs of this suit, and any other relief the Court deems just and proper.

## COUNT TWO– ASSAULT
### (Defendants Harris)

29. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30. Defendant Officer Harris escalated the incident as Plaintiff attempted to exit the bus. Without warning or provocation, Harris came up behind Plaintiff and forcefully shoved him as Plaintiff was navigating the steps to leave the bus. This sudden physical act, by its nature and context, caused Plaintiff to fear further imminent harm and contributed to the hostile and threatening environment.

31. As a direct and proximate result of the actions of Defendant Harris, Plaintiff suffered physical injuries as well as significant psychological trauma. The threatening and aggressive conduct by both officers exacerbated Plaintiff's pre-existing health conditions and caused substantial distress.

32. Defendant was aware that his conduct posed a risk of harm to Plaintiff, yet hey proceeded with actions that amounted to intentional assault, exhibiting a callous disregard for Plaintiff's safety and well-being.

33. Plaintiff did not consent to any use of force or threat of force by the Defendant, and his actions were unjustifiable under the circumstances, especially considering Plaintiff's vulnerable state.

34. As a result of the actions of Defendant Harris, Plaintiff suffered actual harm, including both physical and psychological injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount of $5,000,000 as well as punitive damages in the amount of $10,000,000, costs of this suit, and any other relief the Court deems just and proper.

### COUNT TWO-GROSS NEGLIGENCE
### (Defendant Harris)

35. Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein

36. The conduct of the Defendant, as described above, went beyond mere negligence and constituted gross negligence and a reckless disregard for Plaintiff's safety, rights, and well-being.

37. Defendant initiated and escalated a physical confrontation with Plaintiff based solely on an unfounded accusation of fare evasion, despite having clear and immediate access to evidence of Plaintiff's fare payment and eligibility.

38. Defendant Harris used excessive and unreasonable force to shove Plaintiff without provocation as he exited, resulting in Plaintiff suffering head trauma and other injuries.

39. At no point did Defendant attempt to de-escalate the situation, verify Plaintiff's credentials using available systems, or act with the caution and care required when dealing with a disabled and law-abiding passenger.

40. These acts and omissions demonstrate a flagrant indifference to Plaintiff's rights and a conscious disregard for the extreme risk of harm their conduct posed. Defendant acted with such little regard for his manifest duties as to raise the belief that their actions were the result of conscious and deliberate indifference to Plaintiff's welfare.

41 Defendant's gross negligence was the direct and proximate cause of the Plaintiff's assault, and battery. The Plaintiff suffered physical injuries, including head and, emotional trauma, exacerbation of his pre-existing conditions, and the potential loss of his liberty as a direct result of the Defendant's grossly negligent and reckless conduct.

42. The wrongful conduct of Defendant, which was undertaken without regard to the health and safety consequences amounted to gross negligence in that Defendant evinced such little regard for his duties of care, good faith and fidelity owed to Plaintiff as to raise a belief that the acts and omissions set forth above were the result of conscious indifference to the rights and welfare of Plaintiff.

43. Defendant acts and/or omissions are of such a character to rise to the level of gross negligence. Furthermore, Plaintiff would show that the acts and/or omissions of Defendant were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness on the part of Defendant that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial personal injury to Plaintiff and engaged in acts or omissions that, when viewed objectively from the standpoint of Defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and

magnitude of the potential harm to others. Further, Defendant had actual, subjective awareness of the risk involved in his acts and omissions, but nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others, including the Plaintiff.

44.As the direct and proximate result of the aforesaid grossly negligent, careless, reckless, willful and wonton acts or omissions of the Defendant, Plaintiff suffered great and permanent physical harm and injury, all of which has and will, upon information and belief, in the future cause Plaintiff to undergo much physical pain, suffering, and mental anguish, and has and will, upon information and belief, in the future cause Plaintiff to have to spend money for medicine and medical services and has caused Plaintiff to suffer economic losses.

WHEREFORE, as a direct and proximate result of the Defendant conduct, Plaintiff  is entitled to recover from Defendant reasonable compensatory damages in an amount in excess of $25,000,000; Moreover, Defendant's conduct was so reckless, malicious, careless and wanton and in such total disregard for the rights and well-being of the plaintiff', such that plaintiff is entitled to punitive damages in the sum in amount to be determined by a fair and impartial jury for all damages, but no less than $20,000,000. Plaintiff suffered, including physical, emotional, and economic injuries.

### COUNT THREE-MARYLAND DECLARATION OF RIGHTS
#### (Defendant Harris)

45.Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

46. Defendant Harris wase acting under color of law and within the scope of their authority as officers of the Metro Police Department when he violated Plaintiff's constitutional rights guaranteed by Articles 24 and 26 of the Maryland Declaration of Rights.

45. Article 24 protects individuals from unreasonable or arbitrary governmental actions, including violations of substantive due process and equal protection principles. Plaintiff, a disabled and lawfully fare-paying passenger, was subjected to an unlawful and discriminatory seizure by Defendant based on false accusations of fare evasion.

46. On December 11, 2023, Plaintiff boarded a Metro Bus in full compliance with all fare requirements, possessing and presenting a valid Metro Smart Access Smart Trip Card for disabled riders. Despite this, Officer Castro, without reasonable suspicion or probable cause, publicly accused Plaintiff of fare evasion in front of other passengers, loudly asserting the baseless claim that Plaintiff had not paid his fare.

47. Defendant Harris compounded the constitutional violations by forcibly shoving Plaintiff from behind as he attempted to comply with the unlawful order to leave the bus, causing Plaintiff to lose balance and sustain physical injuries. This use of excessive force was unjustified, unreasonable, and violated Plaintiff's right to be free from excessive, unwarranted physical coercion.

48. The assault, battery and use of excessive force against Plaintiff, Defendant Harris, was neither reasonable or constitutionally supported.  Plaintiff was not resisting, was not armed or dangerous, and posed no threat to public safety or the officers.

49. Despite clear evidence of Plaintiff's innocence, including his valid fare card, witness statements, and available surveillance footage, Defendant persisted his excessive use of force, and subjecting him to public humiliation, physical harm, and emotional trauma.

50. Defendant's actions demonstrate a reckless disregard for Plaintiff's constitutional rights, executed without justification or legal basis, violating the protections guaranteed under

Articles 24 and 26 of the Maryland Declaration of Rights and substantially violated Plaintiff's due process.

51.As a direct and proximate result of Defendant unlawful conduct, Plaintiff suffered physical injuries, severe emotional distress, loss of liberty, and incurred economic damages related to medical treatment and legal defense.

WHEREFORE, Plaintiff, demands judgment against Defendant for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount of $10,000,000, as well as punitive damages in the amount to be determined at trial, attorneys fees and cost and any other relief the Court deems just and proper.

**COUNT FOUR- VIOLATION OF SECTION 504**
**OF THE REHABILITATION ACT OF 1973**
**(Defendant WMATA)**

52.Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

53.Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. WMATA, as a recipient of substantial federal financial assistance during fiscal year 2023 and at all times relevant to this complaint, is subject to Section 504's requirements and prohibitions.

54.Plaintiff Damon Wilson is a qualified individual with a disability who was legally entitled to utilize WMATA's public transportation services.  Mr. Wilson was regarded as having a disability by WMATA,  by virtue of having a valid Metro Smart Access Smart Trip Card, which explicitly evidenced his status as a disabled individual qualified to access WMATA's services and

accommodations. This special access card is specifically issued to individuals with disabilities to ensure their equal access to public transportation services.

55. WMATA, through its agents and employees, discriminated against Mr. Wilson solely by reason of his disability by: (a) failing to recognize and honor his valid disabled access card; (b) refusing to verify the legitimacy of his disability credentials when presented; (c) subjecting him to heightened and unwarranted scrutiny despite his proper documentation; (d) wrongfully accusing him of fare evasion despite clear evidence of his valid disability access credentials; and (e) forcibly excluding him from public transportation services for which he was properly qualified and authorized to use.

56. The discrimination manifested in WMATA's denial of Mr. Wilson's right to access public transportation services despite his presentation of valid disability credentials. When Mr. Wilson attempted to demonstrate his lawful right to access the service by showing his Metro ID Card with his name, ID number, and expiration date, WMATA's officers deliberately ignored this documentation and instead demanded his removal from the bus, effectively denying him access to public transportation solely due to their refusal to acknowledge his disability credentials.

57. WMATA's conduct reflects a systemic failure to properly train and supervise its officers regarding the rights of disabled passengers and proper verification of disability credentials. The failure of officers to intervene or correct the discriminatory conduct, even after being presented with evidence of Mr. Wilson's valid disability status, demonstrates a pattern of institutional indifference to the rights of disabled passengers.

58. As a direct and proximate result of WMATA's discriminatory conduct and violations of Section 504, Mr. Wilson has suffered the denial of his right to access public transportation services, emotional distress, and humiliation. The subsequent wrongful prosecution based on these

discriminatory actions further compounded the harm and damages suffered by Mr. Wilson by further denying his right to equal access to public transportation services.

59. These actions and omissions by WMATA and its employees were undertaken with deliberate indifference to Mr. Wilson's federally protected rights and with reckless disregard for the probability that he would be deprived of his civil rights. The discriminatory conduct was intentional, malicious, willful, and wanton, demonstrating a reckless and callous indifference to Mr. Wilson's federally protected rights under Section 504.

WHEREFORE, Plaintiff Damon Wilson demands judgment against Defendant WMATA in an amount exceeding $25,000,000 in compensatory damages, punitive damages in the amount of $10,000,000, attorneys' fees and costs pursuant to 29 U.S.C. § 794a, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

*Kim Parker*

_____

**KIM PARKER, ESQUIRE**
**FED BAR NO.: 23894**
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

**BRANDON JAMES, ESQUIRE**
**FED BAR NO.: 22125**
The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org

COUNSEL FOR PLAINTIFF

**UNITED STATES DISTRICT COURT OF MARYLAND**
**GREENBELT DIVISION**

**DAMON B. WILSON**

      Plaintiff,

vs.                                                                                  CASE NO. **8:25-CV-01312-PX**

**WASHINGTON METROPOLITAN AREA**
**TRANSIT AUTHORITY (WMATA,** *et al*
     Defendants,

## JURY TRIAL PRAYER

Plaintiff prays a jury trial on all counts stated herein.

Respectfully submitted,

*Kim Parker*

_____

**KIM PARKER, ESQUIRE**
**FED BAR NO.: 23894**
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

**BRANDON JAMES, ESQUIRE**
**FED BAR NO.: 22125**
The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org

COUNSEL FOR PLAINTIFF