~~UNITED STATES DISTRICT COURT OF MARYLAND~~
~~GREENBELT~~**UNITED STATES DISTRICT COURT OF MARYLAND GREENBELT** DIVISION

| | |
|---|---|
| **DAMON B. WILSON**<br>6904 Stirling Street<br>Fort Washington, Maryland 20744<br><br>~~PLAINTIFF~~<br>PLAINTIFF<br>-versus-<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT**<br>~~WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY~~**AUTHORITY**<br>**(WMATA)**<br>Serve: Patricia Y. Lee, Resident Agent<br>600 5th Street, N.W.<br>Washington, DC 20001<br><br>~~BRYAN CASTRO~~<br><br>**LYNDON HARRIS**<br>c/o Janice L. Cole, Esquire<br>Law Department 7E<br>Washington Metropolitan Area Transit<br>Authority<br>PO BOX 44390<br>Washington, D.C. 20026-4390<br><br>~~LYNDON HARRIS~~<br>~~c/o Janice L. Cole, Esquire~~<br>~~Law Department 7E~~<br>~~DEFENDANTS'~~<br><br>~~WASHINGTON METROPOLITAN AREA TRANSIT~~<br>~~Authority~~<br>~~PO BOX 44390~~<br>~~Washington, D.C. 20026-4390~~<br><br>~~GERALD RICH~~<br>~~c/o Janice L. Cole, Esquire~~ | CASE NO.:  **8:25-CV-01312-PX** |

Inserted Cells

~~Law Department 7E~~
~~Washington Metropolitan Area Transit~~
~~Authority~~
~~PO BOX 44390~~
~~Washington, D.C. 20026-4390~~

~~**METRO OFFICER JOHN DOE**~~
~~600 5th Street, N.W.~~
~~Washington, DC 20001~~

~~——— DEFENDANTS~~

~~CASE NO.:   8:25-CV-01312-PX~~

**<u>FOURTH AMENDED COMPLAINT AND JURY TRIAL PRAYER</u>** [1]

**NOW COMES**, Damon Wilson (the "Plaintiff") by and through his attorneys, ~~KIM PARKER, AND LAW OFFICES OF KIM PARKER~~KIM PARKER, AND LAW OFFICES OF KIM PARKER, P.A., ~~BRANDON JAMES AND THE JAMES LEGAL GROUP~~BRANDON JAMES AND THE JAMES LEGAL GROUP, LLC, and sues the aforementioned ~~Defendants~~Defendants', Plaintiff is suing the aforementioned defendants jointly and severally. Plaintiff incorporates all previously filed complaints, as if herein restated, and in support thereof, states the following:

**<u>INTRODUCTORY STATEMENT</u>**

~~1.This legal action is initiated to seek substantial monetary damages in accordance with the common law principles established in the State of Maryland and the provisions delineated in the Maryland Declaration of Rights. The action is specifically directed against four Metro Transit Police Officers — namely, Officers Harris, Castro, Rich, and Doe — who are being held accountable for their actions in both their official capacities as law enforcement officers and their individual personal capacities. This dual approach underscores the gravity of their alleged misconduct and the implications of their role in the enforcement of the law.~~

~~2. Metro Transit Authority~~1.Metro Transit Authority ("MTA") has aggressively engaged in fare evasion initiatives aimed explicitly at addressing, what they allege to be pressing issue of fare evasion on public transportation systems throughout the region. Under Maryland law, fare evasion constitutes a criminal violation, and offenders are subject to civil penalties that can escalate to as much as $100.

It is particularly noteworthy that during the period spanning from January 1, 2016, to February 5, 2018, law enforcement officials conducted over 30,000 stops based on suspected fare evasion violations, highlighting a significant and ongoing enforcement effort. In the year 2016 alone, a total of 5,360 citations or summonses were issued to individuals accused of fare evasion. This number saw a staggering increase in 2017, escalating to 13,762 citations[2], reflecting an intensified crackdown on fare violations. Following the implementation of the new safety initiative

---

[1] The Complaint is currently being amended in accordance with the Court's June 10, 2026 Order, which granted in part Plaintiff's Motion for Leave to File a Fourth Amended Complaint. The amendments are being made to fully comply with the directives set forth in the Court's Order.

[2] https://ggwash.org/view/69171/a-new-report-highlights-the-stark-racial-disparities-in-metro-fare-enforcem ~~²~~ ~~https://www.justice.gov/opa/pr/former-dc-metro-transit-police-officer-sentenced-federal-civil-rights-violation~~beating

on November 1, 2022, Metro Police adopted a more aggressive stance in targeting individuals suspected of fare evasion, conducting numerous stops and enforcement actions. Disturbingly, there have been numerous accounts describing the use of excessive force and actions characterized as barbaric by Metro Transit Police Officers, culminating in several officers facing conviction for egregious violations of civil ~~rights²~~rights[1]. The Plaintiff in this case seeks justice and appropriate compensation for the significant and wrongful acts inflicted upon him by the ~~Defendants~~Defendant, asserting that ~~their~~his behavior was not only unprofessional but also unlawful, resulting in considerable harm.

## ~~JURISDICTION~~

## JURISDICTION

~~3.~~　2. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under Maryland State law.

~~4.~~　3. All conditions precedent to filing this action have been satisfied prior to the filing of the instant complaint.

## ~~PARTIES~~

## ~~5~~PARTIES

4. The Plaintiff, Damon Wilson, is a resident of Prince George's County, Maryland. At all relevant times, Plaintiff was a business invitee on the Metro Bus, and as such, Defendants owed a duty of care to him.

~~6~~5. At all relevant times, the Defendant, Washington Metropolitan Area Transit Authority (hereinafter referred as "WMATA") d/b/a Metro Transit Police Department ("MTPD") ~~was~~ is at all times relevant herein is a interstate compact agency, by the terms of its enabling legislation, an

---

[1] https://www.justice.gov/opa/pr/former-dc-metro-transit-police-officer-sentenced-federal-civil-rights-violation-beating

agency and instrumentality under the Laws of the State of Maryland, District of Columbia, and Virginia codified in Maryland Code, Transportation Article § 10-204. At all times relevant herein owned and operated the MetroAccess bus involved in the aforementioned incident.

7. Defendant Bryan Castro (hereinafter referred to as "Defendant Castro") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Castro is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Castro owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Castro acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Castro had a nondelegable duty to the Plaintiff. Defendant Castro was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Castro was acting under color of law as a member of the MTPD. Defendant Castro is being sued in his individual capacity.

86. Defendant Lyndon Harris (hereinafter referred to as "Defendant Harris") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Harris is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Harris owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Harris acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Harris had a nondelegablenon-delegable duty to the Plaintiff. Defendant Harris was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Harris was acting under color of law as a member of the MTPD. Defendant Harris is being sued in his individual capacity.

10.    Defendant Gerald Rich (hereinafter referred to as "Defendant Rich") represented himself to the Plaintiff and the general public as an experienced, competent Police Seargent who acted with supervisory authority of Defendants Castro, and Harris; as defined by Maryland law. Upon information and belief, Defendant Rich is a resident of Prince Georges County, Maryland.

He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Rich owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Rich acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Rich had a non-delegable duty to the Plaintiff.

Defendant Rich was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Rich was acting under color of law as a member of the MTPD. Defendant Rich is being sued in his individual capacity.

11. Defendant Metro Officer John Doe (hereinafter referred to as "Defendant Doe") represented himself to the Plaintiff and the general public as an experienced, competent Police Officer as defined by Maryland law. Upon information and belief, Defendant Doe is a resident of Prince Georges County, Maryland. He is expected to possess the level of skill and knowledge typically associated with professionals who dedicate significant study and attention to policing. As such, Defendant Doe owed a duty to the Plaintiff that is ordinarily expected of policing professionals. Throughout the relevant time period, Defendant Doe acted either individually or as an actual or apparent agent, servant, or employee of WMATA. Therefore, Defendant Doe had a non-delegable duty to the Plaintiff. Defendant Doe was acting within the scope and course of his employment as a member of the MTPD. At all times relevant to this Complaint, Defendant Doe was acting under color of law as a member of the MTPD Defendant Doe is being sued in his individual capacity.

12. The Defendants John Doe are individuals and/or entities whose identities have yet to be fully determined. Upon reasonable discovery, once these individuals are identified, the Plaintiff intends to amend this Complaint to reflect their true names and capacities as soon as that information is available.

**FACTS RELEVANT TO EACH COUNT**

7. On December 11, 2023, Plaintiff Damon Wilson boarded a Metro Bus in Prince George's County, Maryland, a move that marked the beginning of a distressing series of events that would alter his day significantly. Plaintiff, a disabled individual, possessed a valid Metro Smart Access Smart Trip Card, which aligned with his legal entitlement to board and ride the public transit system without the burden of fare evasion.

8. Upon entering the bus, Plaintiff complied with all expected protocols. He proceeded to find a seat, demonstrating orderly and appropriate behavior as a passenger. Choosing

a seat directly across from the rear of the bus, Plaintiff settled in comfortably, prepared for his journey ahead.

~~15~~9.The atmosphere on the bus was generally calm until a disturbance erupted. An unidentified individual, later revealed to be ~~Defendant~~ Officer Bryan Castro, approached Plaintiff. This officer was dressed in plain clothes devoid of any visible insignia that would indicate his law enforcement status, adding an element of confusion and uncertainty to the interaction. ~~He tapped~~ He tapped Plaintiff on the shoulder in a manner that disrupted Plaintiff's peace.

~~Plaintiff on the shoulder in a manner that disrupted Plaintiff's peace.~~
~~16.Identifying~~10. Castro identified himself as an Officer, ~~Defendant Castro~~and displayed his law enforcement credentials in a manner that was more intimidating than reassuring. The display of authority came with an unfounded accusation, as Castro claimed that Plaintiff had engaged in fare evasion, a serious allegation given the context and amounting to a direct affront to Plaintiff's integrity as a lawful passenger.

~~17~~11. Taken aback by the accusation, Plaintiff immediately refuted this allegation, retrieving and presenting his Metro ID Card with urgency. The card prominently displayed his name, ID number, and expiration date, serving as unequivocal proof of his lawful status and qualification for the disabled fare.

~~18~~12.Rather than acknowledging the validity of Plaintiff's ID Card, ~~Defendant~~Officer Castro remained obstinate and unyielding. He coldly asserted that because Plaintiff had not "flashed" his card in a timely manner, he must disembark the bus immediately, threatening that failure to comply would result in a charge of fare evasion. Despite having no factual basis for such a claim, Castro insisted on the unjust demand.

~~19~~13. Notably, throughout this troubling exchange, ~~Defendant~~Officer Castro did not take any steps to verify the status or validity of Plaintiff's credentials, disregarding his responsibility as

an officer to confirm facts prior to making accusations against a citizen. When Plaintiff protested, DefendantOfficer Castro displayed a can of mace, and threatened to mace plaintiff if he did not leave.

2013.Feeling frustrated yet compelled to avoid further conflict, Plaintiff complied with Castro's demands and began to exit through the rear exit of the bus. However, as he navigated down the two steps leading from the bus, the situation escalated dangerously. With no provocation, an unidentified male, later identified as Defendant Officer Lyndon Harris placed his hands on Plaintiff and forcefully shoved him from behind.

Plaintiff and forcefully shoved him from behind.

21.    14. The unwarranted shove sent Plaintiff crashing violently forward, causing him to strike his head against the hard glass panel of the bus, a sudden and barbaric act that startled other passengers and further exacerbated the tension. Instead of de-escalating the situation, Defendant Harris ratcheted up the aggression. Emboldened by his colleague's actions, he then shoved Plaintiff again, this time forcefully pushing him to the ground, where Plaintiff landed helplessly on the unforgiving pavement.

22.    15. As Plaintiff lay on the ground, disoriented and in agony, none of the officers present offered any form of assistance or even a semblance of concern regarding Plaintiff's welfare. They stood idly by while Plaintiff endured both physical and psychological suffering, lacking the basic decency expected from individuals sworn to protect and serve.

23.    16. Shortly thereafter, Defendants Sergeant Rich arrived at the scene. Despite hearing Plaintiff's repeated assertions that he was a valid Metro cardholder, Sergeant Rich indicated he would investigate the assault and battery that had just occurred against Plaintiff, showing a dismal disregard for the obvious misconduct of the involved officers.

24. 17. In a shameful turn of events, even after Plaintiff had provided verification of his valid card, the ~~Defendants~~Defendant Harris resolved to charge him with fare evasion, a clear miscarriage of justice that compounded his humiliation.

~~25~~18. Following this series of events, Plaintiff was transported via ambulance to a nearby hospital, overwhelmed by pain and confusion. Medical evaluations revealed serious injuries, including a diagnosis that necessitated a recommendation for a hip replacement due to the extent of the trauma sustained during the aggressive encounter.

26. 19. As a direct consequence of the excessive force exerted by ~~the Defendants~~Defendant Harris, coupled with the psychological trauma endured throughout this ordeal, Plaintiff Damon Wilson experiences both physical pain and profound emotional distress. The injuries he has sustained, compounded by the exacerbation of pre-existing mental health and physical conditions, have left him facing ongoing suffering, fear, and anxiety.

27. 20. Following WMATA MTPD's issuance of the citation, the Prince Georges County

State's Attorney's Office initiated criminal prosecution against Plaintiff for fare evasion in the District Court of Maryland for Prince Georges County. The State's Attorney's Office proceeded with the prosecution based exclusively on the WMATA MTPD citation document, without obtaining any corroborating evidence. The prosecuting attorney did not interview WMATA MTPD Officers who issued the citation, did not secure the available surveillance footage from where the alleged incident occurred, did not obtain witness statements from Metro employees or passengers present during the incident, and did not verify the electronic fare payment records from

Plaintiff's registered SmartTrip card. Subsequently, on April 2, 2024, dismissed all charges against Plaintiff in the District Court of Maryland for Prince Georges County on the request of the

State's Attorneys Office.

~~Attorneys Office.~~

**COUNT ONE– BATTERY**
**(Defendant ~~Castro and~~ Harris)**

21. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

22. At all times relevant to this action, ~~Defendants were~~Defendant was acting within the scope of their duties as Police Officers, and under the color of State law.

23. On or about December 11, 2023, while Plaintiff was lawfully traveling as a passenger on a Metro Bus in Prince George's County, Maryland, he was subjected to unlawful and intentional physical contact by Defendant Officer Harris ~~and Defendant Castro.~~. Without any provocation or justification, Officer Harris forcefully shoved Plaintiff from behind as Plaintiff attempted to exit the bus.

the bus. In addition, Defendant Castro, acting in plain clothes and without identifying insignia, initiated the confrontation by tapping Plaintiff on the shoulder in an unwelcome and disruptive manner. This physical contact by Castro was intentional, lacked consent, and contributed to the escalation of the encounter.

31. The unwelcome touching by Defendant Castro occurred in a context where Plaintiff, a disabled individual lawfully riding the bus, had complied with all protocols and presented his valid Metro ID Card when accused of fare evasion. Rather than verifying Plaintiff's credentials or deescalating, Castro threatened Plaintiff with mace and ordered him off the bus, using his position of authority to intimidate and physically intrude upon Plaintiff's personal space.

32. The combined actions of Defendants Harris and Castro 24. The actions of Defendant Harris caused Plaintiff to lose his balance, resulting in a violent collision with the bus interior and causing Plaintiff to strike his head against the glass panel. The force applied and the manner of contact were excessive, unjustified, and infringed upon Plaintiff's rights to bodily integrity and personal security.

33. 25. The actions of both Defendants, including Castro's unwelcome contact and threats as well as Harris'sthe Defendant Harris shove, were intentional, harmful, and offensive, and undertaken with the purpose of asserting control and inflicting harm or discomfort.

34. 26. Plaintiff did not consent to any physical contact by the Defendants, and theirhis actions were not justified under any circumstances.

35. Defendants' 27. Defendant's conduct was malicious, carried out with reckless disregard for Plaintiff's rights and condition, and demonstrated an evil motive or intent to harm.

36. 28. Therefore, Defendants areDefendant is liable for battery against Plaintiff due to theirhis unlawful, intentional, malicious, and reckless conduct.

- WHEREFORE, Plaintiff demands judgment against DefendantsDefendant for compensatory

damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering in the amount of $~~50~~10,000,000, as well as punitive damages in the amount of $~~10~~5,000,000, costs of this suit, and any other relief the Court deems just and proper.

**COUNT TWO– ASSAULT** ~~(Defendants' Castro and~~
**(Defendants** Harris)**

~~37.~~    29. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

~~38.    During the incident aboard the Metro Bus, Defendant Officer Castro threatened Plaintiff by displaying a canister of mace and issuing a direct warning that he would use the mace if Plaintiff did not immediately comply with his demand to disembark. This threat was made without any lawful basis and while Plaintiff was complying and presenting valid fare credentials.~~

~~39.    The conduct of Defendant Castro, in brandishing mace and making a menacing statement, created a reasonable apprehension in Plaintiff of imminent harmful or offensive contact. Plaintiff experienced genuine fear for his safety, heightened by Castro's aggressive demeanor and the intimidating use of his authority.~~

~~40.    In addition to Castro's actions,~~30. Defendant Officer Harris escalated the incident as

Plaintiff attempted to exit the bus. Without warning or provocation, Harris came up behind Plaintiff and forcefully shoved him as Plaintiff was navigating the steps to leave the bus. This sudden physical act, by its nature and context, caused Plaintiff to fear further imminent harm and contributed to the hostile and threatening environment.

~~41.~~    31. As a direct and proximate result of the actions of ~~Defendants Castro and~~Defendant Harris, Plaintiff suffered physical injuries as well as significant psychological

trauma. The threatening and aggressive conduct by both officers exacerbated Plaintiff's pre-existing health conditions and caused substantial distress.

42. ~~Both Defendants were~~32. Defendant was aware that ~~their~~his conduct posed a risk of harm to Plaintiff, yet ~~they~~hey proceeded with actions that amounted to intentional assault, exhibiting a callous disregard for Plaintiff's safety and well-being.

43. 33. Plaintiff did not consent to any use of force or threat of force by ~~either~~the Defendant, and ~~the~~his actions ~~of Castro and Harris~~ were unjustifiable under the circumstances, especially considering Plaintiff's vulnerable state.

44. 34. As a result of the actions of ~~Defendants Castro and~~Defendant Harris, Plaintiff suffered actual harm, including both physical and psychological injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount of $~~2~~5,000,000 as well as punitive damages in the amount of $~~50~~10,000,000, costs of this suit, and any other relief the Court deems just and proper.

**COUNT ~~THREE - DEFAMATION *PER SE* (Defendants Castro, Harris and Doe)~~**

~~45. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.~~

~~46. During the events of December 11, 2023, while Plaintiff was lawfully riding a Metro Bus in Prince George's County, Maryland, Defendant Officer Castro publicly and falsely accused Plaintiff of fare evasion, a criminal offense under Maryland law. This accusation was made in a loud and accusatory manner, in the presence of other passengers, ensuring that multiple members of the public overheard the statement. At no point did Plaintiff evade payment; he possessed and presented a valid Metro Smart Access Smart Trip Card that established his lawful entitlement to ride the bus.~~

47.    The accusation by Defendant Castro was not a mere misunderstanding or a good faith inquiry. After Plaintiff presented his Metro ID Card, clearly displaying his name, ID number, and expiration date, Defendant Castro disregarded this evidence. Instead, he insisted without verifying the card's validity or the fare status that Plaintiff had not "flashed" his card in a timely manner and therefore must be removed from the bus for fare evasion. Defendant Castro's statements were made with actual malice, as he ignored objective proof, persisted in the false accusation, and escalated the situation by threatening Plaintiff with mace and demanding his removal.

48.    Defendant Castro's conduct extended beyond the bus. He repeated the same false allegation in official paperwork and reports, leading to the filing of criminal charges against Plaintiff for fare evasion. These public records and the criminal complaint, which were accessible to others, further spread the defamatory accusation.

49.    The statements made by Defendant Castro constitute defamation per se under Maryland law, as they falsely impute to Plaintiff the commission of a crime and directly attack his integrity and lawfulness in the community. Publicly accusing someone of criminal conduct is inherently damaging to reputation, exposing the accused to contempt, ridicule, and shunning within the community. Defendants' actions were not limited to the context of an arrest or official investigation, but included repeated, public, and malicious accusations that were not supported by any factual basis.

50.    Defendant Officer Harris, by participating in the removal of Plaintiff from the bus in front of other passengers and by failing to correct or investigate the false accusation, further contributed to the spread and credibility of the defamatory statement. The involvement of a uniformed officer in forcibly removing Plaintiff underscored the seriousness of the accusation in the eyes of the public, amplifying the reputational harm.

51.    As a direct and proximate result of these defamatory statements and actions, Plaintiff suffered significant harm. The harm was not limited to reputational damage; Plaintiff experienced

emotional distress, fear, humiliation, embarrassment, and ridicule. He was subjected to public suspicion and social stigma, all of which are actionable injuries under Maryland law.

52. The statements made by Defendants were false. Plaintiff was not engaged in fare evasion, and Defendants either knew or acted with reckless disregard for the truth when making and repeating these statements. The statements were made with actual malice, as evidenced by Defendants' refusal to review or acknowledge the exculpatory evidence presented by Plaintiff and their conscious decision to escalate the situation despite knowing the accusation was unfounded.

53. Defendants made false and defamatory statements to third parties, namely the

passengers on the bus and through official channels, with legal fault and actual malice. Plaintiff has suffered significant injury, including emotional distress capable of objective determination, reputational damage, and public humiliation.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory

damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount of $20,000,000 , and any other relief the Court deems just and proper.

**COUNT FOUR - MALICIOUS PROSECUTION (Defendant Castro, Rich, Doe, and Harris)**

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. On December 11, 2023, Defendants Castro, Harris, Rich, and Doe initiated and maliciously pursued criminal charges against Plaintiff for fare evasion. This was done despite Plaintiff's immediate presentation of his valid Metro Smart Access Smart Trip Card, repeated verbal confirmation of his lawful status as a qualified disabled passenger, and the existence of an electronic verification system that could have instantly confirmed his eligibility.

57. The Defendants chose to ignore the presence of multiple witnesses on the bus who observed Plaintiff's proper boarding and conduct, and moved forward with making and supporting the charges even though there was no evidence to suggest fare evasion had occurred.

58. The criminal charges were pursued through the issuance of a citation and supporting statements by Defendants, which directly led to the commencement and continuation of a criminal proceeding against Plaintiff.

59. Throughout the prosecution, which lasted from December 11, 2023 through April 2, 2024, Defendants failed to conduct any meaningful investigation. They deliberately ignored bus surveillance footage and electronic data from Plaintiff's Smart Trip Card, both of which would have confirmed Plaintiff's lawful entry and status.

60. Defendants also disregarded the fact that Plaintiff was physically assaulted during the incident, requiring emergency medical attention and resulting in injuries so severe as to necessitate ongoing treatment and a recommendation for hip replacement surgery.

61. On April 2, 2024, the criminal charges brought against Plaintiff as a result of Defendants' actions were dismissed in the District Court of Maryland for Prince George's County. This dismissal represented a favorable termination of the prosecution for Plaintiff.

62. The actions of Defendants were undertaken with malice and in the absence of probable cause.

63. Defendant Castro, acting in plain clothes, initiated the confrontation with hostility, threatened Plaintiff with mace, and refused to acknowledge Plaintiff's valid identification.

64. Defendant Harris escalated the situation by using excessive force, and both Rich and Doe failed to intervene or verify the facts before supporting the prosecution. Throughout the entire period, Defendants ignored clear evidence of Plaintiff's innocence and persisted in the prosecution for reasons unrelated to any legitimate pursuit of justice. Their conduct was fueled by improper motives and a reckless disregard for Plaintiff's rights and well-being.

65. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered substantial harm. This includes physical injuries requiring ongoing medical care, aggravation of existing health conditions, severe emotional distress and psychological trauma, legal expenses incurred in defending against the unfounded charges, loss of freedom and liberty, and continuing anxiety and fear regarding his ability to use public transportation.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering in an amount greater than $15,000,000, costs of this suit, and any other relief the Court deems just and proper.

**COUNT FIVE – NEGLIGENCE (Defendants Castro, and Harris)**

66. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67. At all times relevant, Defendants Rich, Doe, Castro, and Harris were acting under color of state law and within the scope of their employment as police officers or supervisors for the Metro Transit Police Department.

68. As officers tasked with public safety, Defendants owed Plaintiff a duty of care to act lawfully, reasonably, and in accordance with established policies and training, particularly when interacting with individuals in vulnerable positions or those with disabilities.

69. This duty of care is heightened when officers initiate direct contact with a specific individual, as occurred here when Plaintiff was approached, questioned, and physically confronted regarding alleged fare evasion.

70. Plaintiff was a fare-paying, disabled passenger who complied with all requirements for bus entry and presented his valid Metro Smart Access Smart Trip Card when asked. Defendants failed to review the credentials properly or use available electronic verification systems and instead persisted in their accusations without any factual basis.

71. Defendants Castro, without justification, initiated a physical and verbal confrontation, threatened Plaintiff with mace, and ordered him off the bus. Defendant Harris escalated the

situation by using excessive force, shoving Plaintiff as he exited, resulting in significant physical injuries.

72.At no time did any Defendant attempt to resolve the situation peacefully, verify facts, or consider Plaintiff's disability and vulnerable condition. Instead, they detained Plaintiff, made public accusations, and removed him from the bus in a manner that subjected him to humiliation, physical harm, and emotional trauma.

73.The actions and omissions of each Defendant constituted breaches of their respective duties to Plaintiff. They failed to act as reasonable officers would under similar circumstances, disregarding both specific policies and general standards of care owed to individuals in their custody or subject to investigation.

74.The Defendant' negligent acts and omissions were direct and proximate causes of the

Plaintiff's injuries and harm.

75. As a direct and proximate result of the Defendants negligence, the Plaintiff has suffered and will continue to suffer significant physical injuries, severe emotional distress, exacerbation of his pre-existing mental health conditions, and substantial pain and suffering. The Plaintiff has incurred and will incur medical expenses and other economic damages, along with non-economic damages for his past and future emotional distress, loss of enjoyment of life, and other permanent harms.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory

damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $1,000,000  costs of this suit, and any other relief the Court deems just and proper.

COUNT SIX**TWO**-**GROSS NEGLIGENCE**  (Defendants  Doe, Castro, and Harris)

76**(Defendant Harris)**

35.Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein

7736.The conduct of Defendants  Doe, Castro, and Harristhe Defendant, as described above, went beyond mere negligence and constituted gross negligence and a reckless disregard for Plaintiff's safety, rights, and well-being.

78.Defendants37.Defendant initiated and escalated a physical confrontation with Plaintiff based solely on an unfounded accusation of fare evasion, despite having clear and immediate access to evidence of Plaintiff's fare payment and eligibility.

79.Defendant Castro threatened Plaintiff with the use of mace and forcibly ordered Plaintiff off the bus, while 38.Defendant Harris used excessive and unreasonable force to shove Plaintiff without provocation as he exited, resulting in Plaintiff suffering head trauma and other injuries.

8039.At no point did any Defendant attempt to de-escalate the situation, verify Plaintiff's credentials using available systems, or act with the caution and care required when dealing with a disabled and law-abiding passenger.

8140.These acts and omissions demonstrate a flagrant indifference to Plaintiff's rights and a conscious disregard for the extreme risk of harm their conduct posed. DefendantsDefendant acted with such little regard for theirhis manifest duties as to raise the belief that their actions were the result of conscious and deliberate indifference to Plaintiff's welfare.

82.The Defendants'41 Defendant's gross negligence was the direct and proximate cause of the Plaintiff's assault, and battery, and false imprisonment. The Plaintiff suffered physical injuries, including head and, emotional trauma, exacerbation of his pre-existing conditions, and the potential loss of his liberty as a direct result of the DefendantsDefendant's grossly negligent and reckless conduct.

8342.The wrongful conduct of DefendantsDefendant, which was undertaken without regard to the health and safety consequences amounted to gross negligence in that DefendantsDefendant evinced such little regard for itshis duties of care, good faith and fidelity owed to Plaintiff as to raise a belief that the acts and omissions set forth above were the result of conscious indifference to the rights and welfare of Plaintiff.

84. Such conclusion is grounded in the fact that Defendants was aware of widespread issues with their MetroPolice Officers injuring, assaulting and mistreating citizens before, during and after the incident involving Plaintiff, and refused to implement adequate measures to correct and prevent the persistent recurrence of the same. Moreover, Defendants were aware, before, during and after the incident involving Plaintiff, that these deficiencies posed a threat to customers who, like Plaintiff, were particularly dependent and in need of transportation.

85.Defendants 43.Defendant acts and/or omissions are of such a character to rise to the level of gross negligence. Furthermore, Plaintiff would show that the acts and/or omissions of DefendantsDefendant were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness on the part of DefendantsDefendant that theirhis acts would, in reasonable probability, result in serious personal injury or death. DefendantsDefendant caused substantial personal injury to Plaintiff and engaged in acts or omissions that, when viewed objectively from the standpoint of DefendantsDefendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, DefendantsDefendant had actual, subjective awareness of the risk involved in his acts and omissions, but nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others, including the Plaintiff.

86    44.As the direct and proximate result of the aforesaid grossly negligent, careless, reckless, willful and wonton acts or omissions of the DefendantsDefendant, Plaintiff suffered great and permanent physical harm and injury, all of which has and will, upon information and belief, in the future cause Plaintiff to undergo much physical pain, suffering, and mental anguish, and has and will, upon information and belief, in the future cause Plaintiff to have to spend money for medicine and medical services and has caused Plaintiff to suffer economic losses.

WHEREFORE, as a direct and proximate result of the Defendants individual and collectiveDefendant conduct, Plaintiff is entitled to recover from DefendantsDefendant reasonable compensatory damages in an amount in excess of $7525,000,000; Moreover, the [I]ndividual DefendantsDefendant's conduct was so reckless, malicious, careless and wanton and in such total disregard for the rights and well-being of the plaintiff, such that plaintiff is entitled to punitive

damages in the sum in amount to be determined by a fair and impartial jury for all damages, but no less than $20,000,000. Plaintiff suffered, including physical, emotional, and economic injuries.

**COUNT SEVEN-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Defendants Castro, Harris, and Does)**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Defendants Castro, Harris, and Does, acting under color of law and within the scope of their employment as police officers, subjected Plaintiff to a course of conduct that was not only intentional and reckless, but also extreme and outrageous, far exceeding the bounds of decency expected in a civilized society.

89. On December 11, 2023, Plaintiff, a disabled and fare-paying passenger, was deliberately targeted by Defendant Castro, who approached Plaintiff in plain clothes, accused him in front of other passengers of fare evasion, and refused to acknowledge clear proof of Plaintiff's lawful status. Defendant Castro's actions included raising his voice to publicly shame Plaintiff, brandishing a can of mace as a threat, and issuing a menacing ultimatum to disembark or face chemical assault.

90. Defendant Harris, acting in concert with Castro, escalated the situation by forcefully shoving Plaintiff from behind as he attempted to exit the bus. This unprovoked and violent act caused Plaintiff to lose his balance, strike his head, and suffer immediate physical injury, all while fellow passengers witnessed the event.

91. The conduct of Defendants did not end with the physical assault. Instead, they persisted in their campaign of humiliation and intimidation by detaining Plaintiff, initiating false criminal charges for fare evasion, and pursuing prosecution despite the availability of exculpatory evidence, including bus surveillance footage and electronic fare records. Defendants' actions were undertaken with malice, ill will, and the specific intent to harm and discredit Plaintiff.

92. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff experienced severe emotional distress. Plaintiff endured acute humiliation and

embarrassment in the presence of strangers, and suffered ongoing psychological trauma, including depression, anxiety, nightmares, and exacerbation of pre-existing mental and physical health conditions.

93.    The emotional distress experienced by Plaintiff is of such an enduring and substantial quality that no reasonable person in a civilized society should be expected to endure it. Plaintiff's daily life has been profoundly impacted, causing persistent fear of using public transportation, loss of peace of mind, and significant interference with his ability to function and participate in ordinary activities.

94. Defendants' actions were undertaken intentionally or with reckless disregard for Plaintiff's well-being, and with a conscious indifference to the foreseeable and devastating impact their conduct would have on a vulnerable individual. Their behavior demonstrated malice, evil motive, and a willful disregard for Plaintiff's rights, safety, and dignity.

95. The actions of Defendants are the direct and proximate cause of Plaintiff's severe emotional and psychological injuries, for which he is entitled to recover compensatory and punitive damages.

WHEREFORE, Plaintiff, demands judgment against Defendants for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount greater than $75,000, as well as punitive damages in the amount to be determined at trial, and any other relief the Court deems just and proper.

## COUNT EIGHTTHREE-MARYLAND DECLARATION OF RIGHTS
### (Defendants  Castro,Defendant Harris, and Rich) )

96

45. Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

97.    Defendants Castro,46. Defendant Harris, and Rich were wase acting under color of law and within the scope of their authority as officers of the Metro Police Department when theyhe violated Plaintiff's constitutional rights guaranteed by Articles 24 and 26 of the Maryland Declaration of Rights.

98.    45. Article 24 protects individuals from unreasonable or arbitrary governmental actions, including violations of substantive due process and equal protection principles. Plaintiff,

a disabled and lawfully fare-paying passenger, was subjected to an unlawful and discriminatory seizure by ~~Defendants~~Defendant based on false accusations of fare evasion.

~~99.~~ 46. On December 11, 2023, Plaintiff boarded a Metro Bus in full compliance with all fare requirements, possessing and presenting a valid Metro Smart Access Smart Trip Card for disabled riders. Despite this, ~~Defendant~~Officer Castro, without reasonable suspicion or probable cause, publicly accused Plaintiff of fare evasion in front of other passengers, loudly asserting the baseless claim that Plaintiff had not paid his fare.

~~100. Defendant Castro's public accusation was made without verifying the validity of Plaintiff's credentials, ignoring available electronic verification systems and multiple eyewitnesses confirming Plaintiff's lawful boarding. Castro's conduct was intentionally humiliating and designed to intimidate Plaintiff, escalating the situation by threatening to use mace if Plaintiff did not immediately comply with the demand to disembark.~~

~~101.~~47. Defendant Harris compounded the constitutional violations by forcibly shoving Plaintiff from behind as he attempted to comply with the unlawful order to leave the bus, causing Plaintiff to lose balance and sustain physical injuries. This use of excessive force was unjustified, unreasonable, and violated Plaintiff's right to be free from excessive, unwarranted physical coercion.

~~102. Defendant Rich arrived on the scene after the physical confrontation but actively participated in the continued detention and citation of Plaintiff. Rich failed to intervene or correct the unlawful conduct of his fellow officers, thereby contributing to the ongoing deprivation of Plaintiff's constitutional protections.~~

~~103. The seizure and detention of Plaintiff was neither supported by probable cause nor conducted pursuant to any lawful exception.~~48. The assault, battery and use of excessive force against Plaintiff, Defendant Harris, was neither reasonable or constitutionally supported. Plaintiff was not resisting, was not armed or dangerous, and posed no threat to public safety or the officers. ~~A reasonable person in Plaintiff's position would have believed that he was not free to leave during the encounter, constituting a seizure under both Article 26 and the Fourth Amendment.~~

10449.Despite clear evidence of Plaintiff's innocence—, including his valid fare card, witness statements, and available surveillance footage, DefendantsDefendant persisted in their unlawful seizure, his excessive use of force, and false accusations, depriving Plaintiff of his liberty and subjecting him to public humiliation, physical harm, and emotional trauma.

105.Defendants'50.Defendant's actions demonstrate a reckless disregard for Plaintiff's constitutional rights, executed without justification or legal basis, violating the protections guaranteed under Articles 24 and 26 of the Maryland Declaration of Rights and substantially violated Plaintiff's due process.

10651.As a direct and proximate result of Defendants'Defendant unlawful conduct, Plaintiff suffered physical injuries, severe emotional distress, loss of liberty, and incurred economic damages related to medical treatment and legal defense.

WHEREFORE, Plaintiff, demands judgment against DefendantsDefendant for compensatory damages, including but not limited to damages for physical injuries, emotional distress, pain and suffering, in the amount of $110,000,000, as well as punitive damages in the amount to be determined at trial, attorneys fees and cost and any other relief the Court deems just and proper.

### COUNT NINE  FALSE IMPRISONMENT    FOUR- VIOLATION OF SECTION 504
### (Defendants Castro, Harris, Doe,)

### 107OF THE REHABILITATION ACT OF 1973
### (Defendant WMATA)

52.Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

108. At all times relevant to this action, Defendants Castro, Harris, and Doe, were acting under color of law as duly sworn officers of the Metro Transit Police Department (MTPD), clothed with the authority of their positions and acting within the scope of their employment.

109. On the above-stated date, Defendants Castro, Harris, and Doe, through their intentional acts and conduct, unlawfully restrained Plaintiff's freedom of movement and deprived him of his liberty without legal justification or probable cause. The restraint was complete and effective, as Plaintiff was confined within fixed boundaries established by the Defendants' actions and threats of force, rendering him unable to move freely or escape the subsequent assault perpetrated against him.

110. The unlawful restraint and false imprisonment manifested through multiple coordinated actions by the Defendants, including but not limited to: (a) Defendant Castro's threatening deployment of pepper spray, which created a reasonable apprehension of immediate harmful contact and effectively restrained Plaintiff's movement; (b) the violent and forceful ejection of Plaintiff from the Metro Bus by Defendants Castro and Harris, which resulted in Plaintiff's physical containment; and (c) the continued detention of Plaintiff at the scene after he had been rendered immobile from the fall, during which time Defendants Rich, and Doe maintained physical control over his person without legal authority or justification.

111. At no time during these events did Plaintiff consent to being detained, confined, or restrained by the Defendants. The entire sequence of events occurred against Plaintiff's expressed will and objections, and no legal justification existed for the Defendants' actions.

112. The Defendants' conduct was characterized by actual malice, evil intent, and improper motivation. Their actions demonstrated a willful and wanton disregard for Plaintiff's constitutional rights, human dignity, and physical well-being. The Defendants knew, or should have known, that their actions would result in the unlawful detention and harm of Plaintiff, yet they proceeded with deliberate indifference to these consequences.

113. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, continues to suffer, and will suffer in the future severe and lasting injuries, including but not limited to: (a) significant physical injuries requiring ongoing medical treatment; (b) severe emotional distress and psychological trauma; (c) substantial medical expenses for past and future treatment; (d) loss of enjoyment of life; and (e) other damages to be proven at trial.

114. The injuries sustained by Plaintiff as a result of this false imprisonment are permanent in nature and will require continued medical treatment and therapeutic intervention, resulting in substantial ongoing medical expenses and diminished quality of life.

WHEREFORE, Plaintiff demands judgment against Defendants Castro, Harris, and Doe, jointly and severally, for compensatory damages in an amount to be determined at trial, plus punitive damages, attorneys' fees, costs, and such other relief as this Court deems just and proper.

**COUNT TEN- VIOLATION OF SECTION 504**
**OF THE REHABILITATION ACT OF 1973 (Defendant WMATA)**

115. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges as follows.

53. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. WMATA, as a recipient of substantial federal financial assistance during fiscal year 2023 and at all times relevant to this complaint, is subject to Section 504's requirements and prohibitions.

54. Plaintiff Damon Wilson is a qualified individual with a disability who was legally entitled to utilize WMATA's public transportation services. Mr. Wilson was regarded as having a disability by WMATA, by virtue of having a valid Metro Smart Access Smart Trip Card, which explicitly evidenced his status as a disabled individual qualified to access WMATA's services and accommodations. This special access card is specifically issued to individuals with disabilities to ensure their equal access to public transportation services.

55. WMATA, through its agents and employees, discriminated against Mr. Wilson solely by reason of his disability by: (a) failing to recognize and honor his valid disabled access card; (b) refusing to verify the legitimacy of his disability credentials when presented; (c) subjecting him to heightened and unwarranted scrutiny despite his proper documentation; (d) wrongfully accusing him of fare evasion despite clear evidence of his valid disability access credentials; and (e) forcibly excluding him from public transportation services for which he was properly qualified and authorized to use.

56. The discrimination manifested in WMATA's denial of Mr. Wilson's right to access public transportation services despite his presentation of valid disability credentials. When Mr. Wilson attempted to demonstrate his lawful right to access the service by showing his Metro ID Card with his name, ID number, and expiration date, WMATA's officers deliberately ignored this documentation and instead demanded his removal from the bus, effectively denying

him access to public transportation solely due to their refusal to acknowledge his disability credentials.

~~120~~57.WMATA's conduct reflects a systemic failure to properly train and supervise its officers regarding the rights of disabled passengers and proper verification of disability credentials. The failure of ~~supervising~~ officers~~, including Sergeant Rich,~~ to intervene or correct the discriminatory conduct, even after being presented with evidence of Mr. Wilson's valid disability status, demonstrates a pattern of institutional indifference to the rights of disabled passengers.

~~121~~58.As a direct and proximate result of WMATA's discriminatory conduct and violations of Section 504, Mr. Wilson has suffered the denial of his right to access public transportation services, emotional distress, and humiliation. The subsequent wrongful prosecution based on these discriminatory actions further compounded the harm and damages suffered by Mr. Wilson by further denying his right to equal access to public transportation services.

~~122~~59.These actions and omissions by WMATA and its employees were undertaken with deliberate indifference to Mr. Wilson's federally protected rights and with reckless disregard for the probability that he would be deprived of his civil rights. The discriminatory conduct was intentional, malicious, willful, and wanton, demonstrating a reckless and callous indifference to Mr. Wilson's federally protected rights under Section 504.

WHEREFORE, Plaintiff Damon Wilson demands judgment against Defendant WMATA in an amount exceeding $25,000,000 in compensatory damages, ~~-~~punitive damages in the amount of $10,000,000, attorneys' fees and costs pursuant to 29 U.S.C. § 794a, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

*Kim Parker*

KIM PARKER, ESQUIRE

FED BAR NOKIM PARKER, ESQUIRE
FED BAR NO.: 23894
LAW OFFICES OF KIM PARKERLAW OFFICES OF KIM
PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

BRANDON JAMES, ESQUIRE

FED

BAR NO
BRANDON JAMES, ESQUIRE
FED BAR NO.: 22125

The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org

COUNSEL FOR PLAINTIFF

UNITED STATES DISTRICT COURT OF MARYLAND GREENBELT

COUNSEL FOR PLAINTIFF

UNITED STATES DISTRICT COURT OF MARYLAND
GREENBELT DIVISION

DAMON B. WILSON

     Plaintiff,

vs.                                    CASE NO. 8:25-CV-01312-PX

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY (WMATA, *et al*
    Defendants,

DAMON B. WILSON

     Plaintiff,

vs.                                    CASE NO. 8:25-CV-01312-PX

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY (WMATA, *et al*
    Defendants,

## JURY TRIAL PRAYER

Plaintiff prays a jury trial on all counts stated herein.


Respectfully submitted,

*Kim Parker*

_____

Page 28

~~KIM PARKER, ESQUIRE~~

~~FED BAR NO~~KIM PARKER, ESQUIRE
FED BAR NO.: **23894**
~~LAW OFFICES OF KIM PARKER~~LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

~~BRANDON JAMES, ESQUIRE~~

~~FED BAR NO~~

**BRANDON JAMES, ESQUIRE**
**FED BAR NO.: 22125**

The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org

~~COUNSEL FOR PLAINTIFF~~

COUNSEL FOR PLAINTIFF