**UNITED STATES DISTRICT COURT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **DAMON B. WILSON**<br><br>Plaintiff,<br>vs.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY (WMATA,** *et al*<br>Defendants, | CASE NO. **8:25-CV-01312-PX** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LYNDON HARRIS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Plaintiff Damon B. Wilson, by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant Lyndon Harris' Motion for Partial Dismissal of Count One (Assault) of Plaintiff's Fourth Amended Complaint. For the reasons set forth below, the Motion should be denied because Plaintiff's assault claim against Officer Harris relates back to the filing of the original Complaint under Federal Rule of Civil Procedure 15(c)(1)(C), and, in any event, did not accrue against Harris specifically until Plaintiff reasonably discovered his identity.

## I. INTRODUCTION

Defendant Harris was not a stranger to this litigation invented out of thin air in 2026. He was the officer who, on December 11, 2023, physically shoved Plaintiff, a disabled, fare-compliant passenger, from behind as Plaintiff attempted to exit a Metrobus, causing him to strike his head on a glass panel and then to be thrown to the ground a second time. Fourth Am. Compl. ¶¶ 13-14. Unlike Officer Castro, who identified himself and displayed his credentials before Plaintiff was ordered off the bus, *id.* ¶ 10, the officer who assaulted Plaintiff from behind never identified himself at all. *Id.* ¶¶ 13-14 (describing him only as "an unidentified male, later identified as Defendant Officer Lyndon Harris"). Plaintiff has, from the outset of this action, sought to hold

accountable the specific individual who assaulted him; he simply lacked, through no fault of his own, and indeed because of Defendants' own conduct at the scene and after, the correct name to attach to that individual until later in this litigation.

This is precisely the circumstance Rule 15(c)(1)(C) and its "mistake concerning the proper party's identity" language were written to address. It is not the case, urged by the case law Defendant would have this Court apply, of a plaintiff who never bothered to learn who was responsible and simply sued a placeholder "John Doe" defendant with no genuine effort at identification. Plaintiff identified and sued the individuals he reasonably believed were responsible based on the information available to him, and specifically preserved his claim against the officer who used force against him by naming John Doe defendants in his original, timely-filed Complaint. He amended to add Officer Harris by name the moment his identity and role became clear, with leave of this Court. *See* Order, **ECF No. 39** (granting Plaintiff leave to file the Fourth Amended Complaint as to Harris). Plaintiff's counsel's efforts to obtain Defendant's identity are a matter of record. **See ECF Nos. 6 and 11.**

The record also reflects something considerably more troubling than mere delay: Plaintiff avers that Sergeant Rich, one of the officers on the scene, affirmatively told Plaintiff that the officer who shoved him was named "Henderson", a name that Defendants' own counsel has since confirmed refers to a different WMATA officer entirely, one who was not present at the scene and who, Plaintiff avers, does not match Harris's description This is not a case where Rule 15(c) is being stretched to rescue an inattentive plaintiff. It is a case where the very Defendants now invoking the statute of limitations are, on the pleaded facts, responsible for the misidentification they now seek to profit from.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

a) **The December 11, 2023 Incident**

On December 11, 2023, Plaintiff was a passenger on a WMATA Metrobus in Prince George's County, Maryland. Fourth Am. Compl. ¶ 7. Plaintiff, a disabled individual, possessed a valid Metro Smart Access Smart Trip Card entitling him to ride. *Id.* Plaintiff was approached by a plainclothes officer, later identified as Officer Bryan Castro, who accused him of fare evasion despite Plaintiff's presentation of a valid disability fare card. *Id.* ¶¶ 9-12. Castro identified himself and displayed his law enforcement credentials before ordering Plaintiff off the bus. *Id.* ¶ 10.

As Plaintiff complied and began to exit the bus, an unidentified officer, who never displayed credentials or otherwise identified himself, shoved Plaintiff from behind, causing him to strike his head on the bus's glass panel, and then shoved him a second time, throwing him to the pavement. *Id.* ¶¶ 13-14. That officer has since been identified as Defendant Lyndon Harris. *Id.* Sergeant Rich arrived at the scene afterward and, despite Plaintiff's repeated assertions that he was a valid cardholder, indicated only that he would "investigate" the assault and battery that had just occurred. *Id.* ¶ 16.

b) ***Plaintiff's Original, Timely-Filed Complaint***

Plaintiff filed his Complaint and Jury Trial Prayer on November 24, 2024, seventeen days before the one-year limitations period applicable to Count One (assault) expired on December 11, 2024. *See* Record, ECF No. 1[1] At the time of filing, Plaintiff had limited information regarding the identities of the individual officers involved beyond Officer Castro, who had identified himself at the scene. Plaintiff accordingly set forth specific factual averments against the known defendants and against John Doe defendants for the officers whose identities remained unknown to him,

[1]See Record, ECF No. 1 (Complaint and Jury Trial Prayer, filed November 24, 2024).

including the officer who physically assaulted him. Plaintiff's original Complaint was timely filed within the statute of limitations as to every count it asserted, and the assault claim it preserved through its John Doe averments should not now be dismissed based on subsequent amendments that merely substituted a name for a placeholder Plaintiff could not yet fill in.

c) ***Defendants' Misrepresentation of the Responsible Officer's Identity***

On September 26, 2024, before he even filed suit, Plaintiff submitted a written request to WMATA specifically describing the incident and formally seeking copies of the relevant body-worn camera video and incident report. **See Exhibit C.** WMATA never responded to that request.

Plaintiff avers that Sergeant Rich informed Plaintiff, in connection with the incident, that the officer who shoved him was an officer named "Henderson." That representation was false. The first time Plaintiff's counsel became aware of Defendant Harris's actual name was on October 15, 2025, nearly two years after the incident, when defense counsel finally provided a copy of the Incident Report. **See Exhibit A.** On January 5, 2026, defense counsel confirmed that an Officer Henderson is in fact employed by WMATA, but was not present at the scene of the incident and is of a different race than the officer Plaintiff described. **Exhibit B.**

It defies logic to expect that Plaintiff could have identified Harris, an officer who never worked at the scene under the name he was given and who does not match the description Plaintiff was provided, through any amount of diligence untethered from the truthful information Defendants alone possessed and did not timely produce.

d) ***WMATA's Obstruction of Plaintiff's Records Requests***

Undersigned counsel's declaration, previously filed with this Court, details the extensive efforts undertaken to obtain both the body-worn camera footage and the incident report related to this matter. **See Attached Declaration, previously filed.** As that declaration explains, WMATA's

procedures governing access to records, whether characterized as Public Access to Records Policy ("PARP") requests, function as a significant obstacle to litigants seeking the very evidence, incident reports and body-worn camera footage, needed to identify the officers responsible for on-the-record misconduct. There is no legitimate justification for WMATA's persistent refusal to respond to a straightforward, pre-suit records request describing the incident in detail. Having withheld the information that would have allowed Plaintiff to name Harris sooner, Defendants should not now be rewarded with dismissal of the very claim their own delay, and their own officer's misstatement, caused to be pled against a placeholder rather than a name.

e) ***This Court's June 10, 2026 Order***

This Court has already considered and ruled on the propriety of adding Harris as a defendant. By Order dated June 10, 2026 (ECF No. 39), the Court granted Plaintiff leave to file a Fourth Amended Complaint naming Harris, while denying leave to further amend as to Castro and Rich. Plaintiff filed the operative Fourth Amended Complaint on June 18, 2026. ECF No. 41.

## III. LEGAL STANDARD

On a motion to dismiss for failure to state a claim, the issue is not whether the plaintiff "will ultimately prevail ... but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).[2] A court must "accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). It must read the complaint as a whole, *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 463 (D. Md. 2013); *Paccar Inc. v. Elliot Wilson*

[2]Accord *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."); *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 767 (D. Md. 2008).

*Capitol Trucks LLC*, 905 F. Supp. 2d 675, 680 (D. Md. 2012), construing it liberally in the plaintiff's favor, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 & n.4 (4th Cir. 1993), and drawing all reasonable inferences in his favor. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). "To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018).

A district court "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will not be dismissed "as long as [the plaintiff] provides sufficient detail ... to show that he has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014); *accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). *See also Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. TDC-15-2400, 2016 WL 4257457, at *9 (D. Md. Aug. 11, 2016) (citing authorities); *accord Baten v. McMaster*, 967 F.3d 345, 368 (4th Cir. 2020) ("[W]here Plaintiffs offer a novel legal theory that can best be assessed after factual development, dismissals at such an early stage are disfavored.").

Ultimately, a plaintiff's burden at the 12(b)(6) stage "is quite minimal," *Doe v. Chesapeake Med. Sols., LLC*, No. SAG-19-2670, 2019 WL 6497962, at *5 (D. Md. Dec. 2, 2019), whereas a defendant bears a "heavy burden." *Augenstein v. McCormick & Co.*, 581 F. Supp. 452, 456 (D.

Md. 1984). In all, a Rule 12(b)(6) motion "should be granted only in very limited circumstances." *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).

These principles apply with particular force to a limitations defense. A limitations defense may be resolved on a Rule 12(b)(6) motion only in the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," and only "if all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (internal quotation marks and citation omitted). Where, as here, the timing of Plaintiff's discovery of Harris's identity, the extent of notice imputed to Harris through WMATA and shared counsel, and the effect of Defendants' own misrepresentation of Harris's identity are all matters requiring a factual record, dismissal at the pleading stage is inappropriate.

## IV. ARGUMENT

### *A. Plaintiff's Assault Claim Against Officer Harris Relates Back to the Filing of the Original Complaint Under Rule 15(c)(1)(C).*

Federal Rule of Civil Procedure 15(c)(1)(C) permits an amendment changing the party against whom a claim is asserted to relate back to the date of the original pleading where (1) the claim arises out of the same conduct, transaction, or occurrence set out in the original pleading, and, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (2) received such notice of the action that it will not be prejudiced in defending on the merits, and (3) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(B)-(C). All three elements are satisfied here. *See* Fed. R. Civ. P. 15; *see also Goodman*, 494 F.3d at 467. If all requirements under Rule 15(c)(1)(C) are met, a court must treat the amended

pleading as if it were filed on the date of the initial pleading. *See* Fed. R. Civ. P. 15; *see also* *Goodman*, 494 F.3d at 471.

1) ***Same Transaction or Occurrence.***

This element is not seriously disputable. Every count against Harris in the Fourth Amended Complaint arises from the identical December 11, 2023 encounter described in every prior iteration of the Complaint. Defendant's own motion concedes as much, stating that "[a]ll counts arise from an incident on a Metrobus which occurred on December 11, 2023." Mot. ¶ 2.

2) ***Harris Received Timely Notice of the Action and Will Suffer No Prejudice.***

Rule 15(c)(1)(C)(i) does not require formal service of process within the Rule 4(m) period; informal or constructive notice suffices, including notice imputed to a new defendant because he shares an attorney[3], or an identity of interest, with a defendant who was timely sued. *Goodman*, 494 F.3d at 470-474 ("the complaint's facial expression of intent to sue the successor in interest, we may also impute that knowledge to Praxair Services, Inc., because both Praxair Services, Inc., and Praxair, Inc., were closely related business entities represented by the same lawyers"); *see also* *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (notice may be imputed through a business relationship between the originally named and newly added parties).

The en banc Fourth Circuit's reasoning in *Goodman* is directly instructive. There, the court held that a subsidiary corporation was on notice of a suit filed only against its parent because the two entities were "parent and subsidiary, respectively, and have employed the same attorneys," such that their "identity of interest eliminate[d] any worry that [the subsidiary] was caught by surprise when the complaint was amended." *Goodman*, 494 F.3d at 458. The court explained that "[n]otice may be presumed when the nature of the claim is apparent in the initial pleading and the

[3]Defendant Harris is represented by the same in-house counsel who represents WMATA, his employer, throughout this litigation.

added defendant has ... a sufficient identity of interest with the original defendant." *Id.* (quoting *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989)).

The same logic applies with at least equal force here. WMATA, Harris' employer and a co-defendant since the inception of this action, has been represented throughout by its own in-house Law Department, and that same office (through Senior Counsel Janice L. Cole) now represents Harris individually. *See* Mot. at 3 (signature block). Just as the parent-subsidiary relationship and shared counsel in *Goodman* imputed notice from the outset, WMATA's institutional knowledge of the identity of its own officers involved in a December 11, 2023 use-of-force incident, and its Law Department's representation of Harris individually, together support the inference that Harris had notice of this suit well within the period contemplated by Rule 4(m). WMATA, and by extension its Law Department, necessarily had knowledge of the identity of the officers involved in the December 11, 2023, incident from or near the outset, including through its own internal incident reports, use-of-force documentation, and whatever body-worn camera footage remains in its possession.

Harris will suffer no cognizable prejudice in defending on the merits. The underlying facts, witnesses, and documentary record, WMATA's own incident file, are identical to those already at issue in this dispute over the same bus stop, and Harris has been represented by the same institutional counsel that has litigated this case since its inception.

***3) Harris Knew or Should Have Known the Action Would Have Been Brought Against Him But for a Mistake Concerning His Identity.***

This is the heart of Defendant's Motion, and it is where Defendant's reliance on "John Doe" case law is misplaced. The Supreme Court in *Krupski* squarely rejected the notion that a plaintiff's failure to name the correct defendant, even where the plaintiff had some information about that party's existence, forecloses relation back, so long as the failure resulted from a mistake about the

proper party's identity rather than a fully informed, deliberate choice to sue one party rather than another. *Krupski*, 560 U.S. at 549-50. The relevant inquiry focuses on what the newly named defendant knew or should have known, not on the plaintiff's diligence or state of mind. *Id.* at 548.

The en banc Fourth Circuit's decision in *Goodman* confirms and extends this principle within this Circuit. The *Goodman* court expressly rejected the argument, pressed by the defendants there and likely to be pressed by Defendant here, that relation back is available only for "clerical" mistakes such as misnomer, and not for a plaintiff's lack of knowledge of the proper party. "[T]he text of Rule 15(c)(3) does not support th[at] parsing of the 'mistake' language," the en banc court explained; the inquiry, when determining whether an amendment relates back, "looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged," and separately "looks into whether the rights of the new party ... will be harmed if that party is brought into the litigation." *Goodman*, 494 F.3d at 472-73. *Goodman* thus squarely places the analysis on the notice and prejudice prongs discussed above, not on artificially subdividing "types" of mistake.

Defendant's likely authority, *Locklear v. Bergman & Beving AB*, 457 F.3d 363 (4th Cir. 2006), does not require a different result, and is in any event distinguishable on its facts. *Locklear* involved a plaintiff who never knew, and never named, any specific individual or entity as the manufacturer of the product that injured her; she sued the wrong party (a town, rather than the actual manufacturer) because she had no information at all connecting any particular company to the product. *Id.* at 365-66. The *Goodman* court later explained that *Locklear* is properly understood as resting on the *notice* prong, that is, the newly-added manufacturer had not been put on notice within the limitations period that it, rather than the town, should have been named, not on a categorical rule that lack of knowledge can never be a "mistake." *Goodman*, 494 F.3d at ("[W]e

limited our holding to the conclusion that the machine manufacturer did not have the knowledge required by Rule 15(c)(3)(B).").

Here, by contrast, Plaintiff witnessed the individual who assaulted him in real time, at the scene, and named the officers he reasonably understood to be responsible based on the information those officers themselves provided: Officer Castro, who affirmatively identified himself and displayed credentials (Fourth Am. Compl. ¶ 10), and Sergeant Rich, who arrived and represented that he would investigate (*id.* ¶ 16), and who Plaintiff avers gave him the name "Henderson" for the officer who used force against him. The officer who actually shoved Plaintiff did not identify himself at all. *Id.* ¶¶ 13-14. Plaintiff's identification of Castro and Rich as the officers involved, his placeholder pleading against a John Doe defendant for the officer whose name he did not yet have, and his subsequent correction upon learning that it was in fact Harris who shoved him, is a quintessential "mistake concerning the proper party's identity," not a failure to investigate or a strategic delay. Unlike the plaintiff in *Locklear*, who had no specific individual in view at all, Plaintiff here identified the very individual, described his conduct in detail in every complaint filed, and pursued his true name through pre-suit records requests, John Doe pleading, and repeated amendment, only to be given, Plaintiff avers, an incorrect name by one of the responding officers himself.

Because Harris was present at, and a direct participant in, the very incident giving rise to this suit, and because his employer and co-defendant WMATA has been a party since the case's inception, Harris knew or should have known that, but for Plaintiff's mistaken identification of the officer who shoved him, an identification caused in material part by Sergeant Rich's own misstatement, this action would have been brought against him from the start.

### ***B. Defendants Are Equitably Estopped From Asserting a Limitations Defense That Their Own Officer's Misrepresentation Caused.***

Independent of relation back, Defendants should be equitably estopped from invoking the statute of limitations at all. Maryland courts "have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it," but equitable estoppel remains available where a defendant's own wrongful conduct caused the plaintiff's delay. *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623-24, 500 A.2d 641, 645 (1985).Specifically, "it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.'" *Id.* at 624, 500 A.2d at 645 (quoting *Nyitrai v. Bonis, 266 Md. 295, 300, 292 A.2d 642 (1972)*.

It is axiomatic that "for equitable estoppel to toll a statute of limitations, a plaintiff must show that there was some wrongful conduct on the part of the defendant that prevented the plaintiff from asserting his or her claim." See *Ademiluyi v. Md. State Bd. of Elections*, No. 35, Sept. Term 2017, 2018 WL 1465131, at *13 (Md. Mar. 26, 2018) Plaintiff avers exactly that kind of wrongful conduct here: Sergeant Rich, a WMATA officer acting in the course of the same incident giving rise to this suit, affirmatively told Plaintiff that the officer who shoved him was named "Henderson," a representation that Defendants' own counsel has since confirmed was false, and WMATA thereafter ignored Plaintiff's September 26, 2024 written request for the incident report and video that would have corrected the record. This is not a case of a plaintiff who slept on a known right; it is a case, on the pleaded facts, of a defendant supplying the wrong name and then withholding the documents that would have supplied the right one.

This conduct also independently supports application of the discovery rule discussed in Section C below, because a defendant's own misrepresentation bears directly on when a plaintiff "reasonably should have known" the identity of the wrongdoer.

### ***C. Alternatively, Plaintiff's Assault Claim Did Not Accrue Against Harris Until Plaintiff Discovered His Identity Through the Exercise of Reasonable Diligence.***

Maryland applies the "discovery rule" to determine when a cause of action accrues for statute-of-limitations purposes: a claim accrues when the plaintiff knows or reasonably should know of the wrong. *Poffenberger v. Risser*, 290 Md. 631, 636-38, 431 A.2d 677, 680-81 (1981). See also *Smith v. Gehring*, 64 Md.App. 359, 364 (1985)(when the original complaint was filed within the controlling limitations period and then, to correct a misnomer, an amended complaint is filed after the limitations period, the amended complaint is deemed to have been filed when the original complaint was filed). This standard "does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice,'" that is, if the plaintiff possesses "facts sufficient to cause a reasonable person to investigate further," and a diligent investigation "would have revealed" the wrong and its author. See *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) ("[A] plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong."). Notice, whether actual or constructive, is the touchstone. *Poffenberger*, 290 Md. at 636.

Where a plaintiff has been prevented from discovering the identity of a wrongdoer through no lack of diligence on his own part, and particularly where a defendant's own agent has affirmatively misdirected the plaintiff's investigation, Maryland's discovery-rule jurisprudence protects against a limitations period running before the plaintiff could reasonably have known whom to sue. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-203 (tolling where "knowledge of a cause

of action is kept from a party by the fraud of an adverse party," until the party discovers, or by ordinary diligence should have discovered, the fact concealed).

Here, Officer Harris never identified himself at the scene, in contrast to Officer Castro. Fourth Am. Compl. ¶¶ 10, 13-14. Plaintiff was, at most, on inquiry notice that an unidentified WMATA officer had assaulted him, not on inquiry notice of Harris's specific identity, particularly once Plaintiff was affirmatively, if the averments are credited, told a different and incorrect name by Sergeant Rich. A reasonable investigation prompted by that misinformation would not have led to Harris; it would have led, as it in fact did when Defendants' counsel finally addressed the question on January 6, 2026, to a different officer entirely, one not present at the scene and of a different race than the officer Plaintiff described. Plaintiff could not have named the specific individual who assaulted him until that individual's identity was disclosed to him in the course of this litigation, through no fault of Plaintiff's own diligence, which is reflected in his prompt naming of Castro and Rich at the earliest opportunity, his pre-suit records request of September 26, 2024, his timely original Complaint with John Doe averments, and his prompt motion to add Harris once his role became clear.

### D. *This Court Should Not Reward WMATA's Obstruction of the Records That Would Have Identified Harris Sooner.*

As outlined in counsel's previously filed declaration, WMATA's procedures governing access to records, whether characterized as Freedom of Information Act or PARP requests, function as a significant obstacle to litigants seeking critical evidence, including incident reports and body-worn camera footage, of the kind that would have identified Harris well before October 2025. This procedural framework operates less as a neutral records policy and more as a practical impediment to the fair administration of justice. There is no legitimate justification for WMATA's persistent failure to respond to Plaintiff's September 26, 2024, request, **see Exhibit C**, and

Defendants should not now be permitted to leverage the consequences of their own non-response, an amended pleading filed after Plaintiff finally obtained the incident report from Defendants themselves, into dismissal of the very claim that non-response delayed. This Court should decline Defendants' invitation to be rewarded for withholding the information that would have mooted their own limitations argument, and should allow this matter to proceed to discovery.

**E. *The Court's June 10, 2026 Order Already Reflects a Determination That Adding Harris Was Appropriate.***

This Court's Order permitting Plaintiff to file the Fourth Amended Complaint as to Harris, while simultaneously denying further amendment as to Castro and Rich, reflects the Court's own assessment that naming Harris, unlike further amendment as to the previously named officers, was warranted. *See* ECF No. 39. While that Order does not itself adjudicate the limitations question presented here, it underscores that Plaintiff's pursuit of the correct defendant has been diligent and court-supervised at every stage, weighing against any suggestion of undue delay or tactical gamesmanship of the kind that defeats relation back.

**F. *In the Alternative, Plaintiff Requests Leave to Conduct Limited Discovery Before the Court Rules on the Limitations Question.***

Because the timing of Harris's constructive notice through WMATA and shared counsel, the scope and timing of WMATA's actual knowledge of Harris's role, and the circumstances surrounding Sergeant Rich's alleged misstatement of Harris's name are all matters outside the four corners of the Fourth Amended Complaint, this Court need not, and should not, resolve Defendant's limitations defense on the pleadings alone. *See Goodman*, 494 F.3d at 464 (a limitations defense may be resolved under Rule 12(b)(6) only where it "clearly appear[s] on the face of the complaint"). Should the Court conclude that the present record does not permit denial of the Motion outright, Plaintiff respectfully requests leave to conduct limited discovery, including

into WMATA's internal incident-reporting and use-of-force documentation practices, the timing of any communications between WMATA's Law Department and Harris regarding this incident, and the circumstances of Sergeant Rich's alleged misstatement, before the Court rules on the limitations question.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Lyndon Harris' Motion for Partial Dismissal of the assault claim in Count One of Plaintiff's Fourth Amended Complaint. In the alternative, should the Court conclude that resolution of the relation-back, equitable-estoppel, or discovery-rule issues requires consideration of matters outside the pleadings, Plaintiff respectfully requests leave to conduct limited discovery on the timing of Defendant's notice of this action and the date Plaintiff reasonably discovered Harris' identity before the Court rules on the Motion.

Respectfully submitted,

Kim Parker

**KIM PARKER, ESQUIRE**
**FED BAR NO.: 23894**
LAW OFFICES OF KIM PARKER, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 443-486-1691
E:kp@kimparkerlaw.com

**BRANDON JAMES, ESQUIRE**
**FED BAR NO.: 22125**
The James Legal Group, LLC
P.O. Box 66247
Baltimore, Maryland 21239
Office: 240-424-5783
Email: bjames@jameslegalgroup.org
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I CERTIFY on this 14th day of August 2026, a copy of the foregoing Opposition to Motion to Dismiss was sent to all counsel of record via the Courts ECF filing system.

Kim Parker

Kim Parker, Esquire